Commonwealth *v.* Blagman, Appellant.

Argued January 22, 1974. Before JONES, C. J., EA-
GEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO,
JJ.

*D. M. Masciantonio,* for appellant.

*David Richman,* Assistant District Attorney, with him *Melvin Dildine,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, October 16, 1974:

Appellant, Robert Blagman, was convicted by a jury of murder in the first degree, robbery, burglary and conspiracy. Following the denial of post-trial motions, a life sentence was imposed for murder and concurrent lesser sentences were imposed for appellant's other offenses. This direct appeal followed.

On May 6, 1970, decedent, Isadore Selez, an elderly junk dealer, was allegedly robbed and murdered by four youths. The following day, four youths including appellant, then aged 16 years, were arrested for an unrelated copper-tubing burglary. Arresting officers, believing that the youths resembled those described in connection with the Selez homicide, transported the four to homicide headquarters.

The chronology of the events that followed is not in dispute. At approximately 6:15 p.m. on May 7, 1970, shortly after his arrest for burglary, appellant was warned of his constitutional rights. Although appel-

lant's original statement to the police denied participation in the homicide, appellant volunteered to "tell what happened" and after approximately forty minutes of questioning agreed to submit to a polygraph test. After approximately a half hour, and upon discovering that all polygraph machines were in use, the police questioned appellant for another forty minutes. Less than an hour after this second round of questioning appellant was taken for his polygraph test. Prior to the test appellant signed a written waiver form indicating that he was taking the examination voluntarily. The test lasted an hour and a half during part of which time appellant was fed. At the conclusion of the test and shortly before 10:30 p.m., appellant admitted his participation in the Selez murder. During the interview which immediately ensued, appellant further explained the circumstances surrounding the homicide and by approximately 1:15 a.m., on the morning of May 8, 1970, the essential details of appellant's criminal activity were reduced to writing.

After relating his involvement in the murder, appellant was left alone. In the meantime, the police escorted appellant's mother to homicide headquarters. When appellant's mother arrived, she was given time to speak with her son and additional warnings were given to both. A formal statement which was practically a verbatim account of earlier admissions, was then recorded.

Prior to trial, a motion to suppress the statements obtained during the evening of May 7 and the early hours of May 8 was denied. Relying upon this Court's application of Rule 118█ of the Pennsylvania Rules of Criminal Procedure in *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), appellant now argues

that his confession was improperly admitted, thereby entitling him to a new trial.[1] Although a minority of the Court has consistently held that *Futch* should only be applied prospectively, *see, e.g., Commonwealth v. Dixon,* 454 Pa. 444, 448, 311 A.2d 613, 615 (1973) (dissenting opinion) and *Commonwealth v. Dutton,* 453 Pa. 547, 551, 307 A.2d 238, 240 (1973) (dissenting opinion), based on the particular facts presented here, even applying *Futch,* relief must be denied.

This case presents a situation where approximately four and one-half hours passed prior to appellant's initial confession. Nevertheless, *Futch* and cases arising therefrom do not stand for the proposition that delay alone, exclusive of other factors, mandates the suppression of a confession. *See, e.g., Commonwealth v. Wayman,* 454 Pa. 79, 83, 309 A.2d 784 (1973), and *Commonwealth v. Tingle,* 451 Pa. 241, 244-45, 301 A.2d 701, 702-03 (1973). Rather those cases indicate that, after determining that a delay existed, our inquiry should focus on whether such delay was unnecessary, whether prejudicial evidence was obtained, and whether such prejudicial evidence was reasonably related to the

---

[1] "Rule 118. Proceedings Initiated by Arrest Without Warrant.

"When a defendant has been arrested without a warrant, he shall be taken without unnecessary delay before the proper issuing authority where a complaint shall be filed against him.

"(a) If the complaint charges a court case, the defendant shall be given an immediate preliminary arraignment. . . ." Adopted January 31, 1970. Eff. May 1, 1970. Rule 118(a) was renumbered as Rule 130, amended September 18, 1973, and became effective January 1, 1974.

In *Futch,* we adopted the federal standard of excluding all evidence obtained during an "unnecessary delay" except that evidence which, as in *United States v. Mitchell,* 322 U.S. 65 (1944), has no reasonable relationship to the delay. Since *Futch,* this court has applied this rule retroactively where objection to a confession is made during a suppression hearing and Rule 118 is later raised on direct appeal. *See, Commonwealth v. Wayman, supra,* and *Commonwealth v. Hancock,* 455 Pa. 583, 317 A.2d 588 (1974).

delay. In this case, since there is a firm basis for finding the delay between appellant's arrest and oral confession both reasonable and not unnecessary, our inquiry need go no further.[2]

The police have an absolute duty to both the public and the accused to investigate the circumstances of a crime in order to ascertain the accused's possible connection with an alleged offense. " 'Questioning suspects is indispensable in law enforcement' . . . Public interest requires that interrogation, and that at a police station, not completely be forbidden, so long as it is conducted fairly, reasonably, within proper limits and with full regard to the rights of those being questioned.' " *Culombe v. Connecticut*, 367 U.S. 568, 578-79 (1961) ; *Commonwealth v. Riggins*, 451 Pa. 519, 526-27, 304 A.2d 473, 477 (1973). *See also, Commonwealth v. Eiland*, 450 Pa. 566, 301 A.2d 651 (1973). Here we have a situation where the initial interrogation of appellant fully complied with this standard. The evidence in this case shows that, after arrest and adequate "*Miranda* warnings," appellant was only questioned twice for relatively short periods.[3] He then rested, ate,

---

[2] For purposes of Pa. R. Crim. P. 118 appellant's arrest for homicide was effectuated upon his admission to homicide headquarters. We are only concerned with the delay which elapsed between this arrest and appellant's subsequent oral statements. As we said in *Futch*, any unnecessary delay following the securing of a confession could not reasonably relate to that confession (*see, e.g., United States v. Mitchell*, 322 U.S. 65 (1944) ; *Government of Virgin Islands v. Gereau*, 502 F.2d 914 (3d Cir. 1974)).

[3] Interestingly, we note that detention in this case does not begin to approach the magnitude of the detention and interrogation in cases cited by appellant. In *Dutton*, the defendant consistently denied any wrongdoing during five separate interrogation sessions in which six different policemen took part. He did not admit participation in the crime until after approximately eight hours of nearly continuous questioning. In *Tingle*, the defendant had been held in custody for some twenty-one hours and had been subjected

used bathroom facilities, waited for and voluntarily received a polygraph examination, and within four and one-half hours of arrest revealed his participation in the crime.

More important than the brevity of this delay, however, is the fact that such delay was justified. The fact that all but the initial constitutional questioning of appellant occurred after learning that polygraph machines were inaccessible and that appellant was agreeable to waiting for such examination supports this contention. As was recently repeated in *Futch,* 447 Pa. at 392, 290 A.2d at 418: "Necessary delay can reasonably relate to time to administratively process an accused with booking, fingerprinting and other steps and sometimes even to make same [sic] limited preliminary investigation into his connection with the crime for which he was arrested, especially when it is directed to possible exculpation of the one arrested. Adams v. United States, 399 F. 2d 574, 579 (D. C. Cir. 1968) (concurring opinion)." Since the accused offered to take the polygraph test within an hour of arrest in order to exculpate himself from the alleged homicide charge, the limited delay due to the administering of such test is the type of permissible preliminary investigation envisioned in *Futch*. Consequently, the time lapse preceding and resulting from the polygraph examination cannot be said to constitute an unnecessary delay. Furthermore, since it was at the conclusion of this examination that appellant admitted his involvement in the alleged·crime and

---

to fifteen hours of interrogation before confession. In *Riggins,* after continually denying participation for seventeen hours, as well as being compelled to submit to two lineups and a lie detector test, and being confronted with a co-defendant, defendant made an oral confession, and in *Eiland,* the defendant was held for seventeen hours, during which time he was intermittently interrogated and isolated for lengthy periods, and after defendant was told he would be treated more leniently, he finally confessed.

since during the interview which immediately followed appellant willingly substantiated and clarified his earlier admission, the subsequent "period of explanation" is likewise not objectionable on *Futch* grounds. *See Commonwealth v. Terry,* 457 Pa. 185, 321 A. 2d 654 (1974).

Appellant further asks the Court to consider as part of the relevant delay the time which elapsed between oral and formal statements. However, since appellant's formal statement was merely a repetition of his earlier incriminating confessions and since both oral and written statements had been admitted in the trial below, even if we were to find the delay following appellant's oral statement unnecessary, at best it would be harmless error. *Chapman v. California,* 386 U.S. 18 (1967). Accordingly we need not consider such delay at this time.

Appellant last contends that under the totality of the circumstances surrounding his oral and signed statements, those statements were made involuntarily. In light of the fact that on appeal by defendant, "appellate review of a suppression hearing is to consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as fairly read in the context of the record as a whole, remains uncontradicted," *Culombe v. Connecticut, supra,* 367 U.S. at 604, *Commonwealth v. Riggins, supra,* 451 Pa. at 522, 304 A.2d at 474, we are left with the unimpugned conclusion that defendant's confessions were freely given, after voluntarily and knowingly waiving rights to counsel and to remain silent, and that admissions were not elicited out of fear.

For the above-stated reasons we are of the opinion that the court below properly admitted the Commonwealth's evidence and, accordingly, judgment of sentence is affirmed.

Mr. Justice POMEROY concurs in the result.

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I concur in the result. In my view, appellant has not properly preserved for appellate review the issue of an alleged violation of Pa. R. Crim. P. 118 (now 130).*

Although appellant's initial suppression hearing was held before our decision in *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972), his trial began almost five months after *Futch* was decided. Defense counsel had ample opportunity to move before trial for a new suppression hearing. *Commonwealth v. Johnson,* 457 Pa. 554, 558 & n.4, 327 A.2d 632, 634-35 & n.4 (1974). However, it was not until trial was completed that appellant in post-trial motions asserted for the first time a claim under Rule 118.

In my judgment, appellant's claim of unnecessary delay was not timely presented and thus may not be considered here. *Commonwealth v. Johnson,* 457 Pa. at 558, 327 A.2d at 635; *Commonwealth v. Williams,* 454 Pa. 261, 263, 311 A.2d 920, 921 (1973); *Commonwealth v. Sasser,* 453 Pa. 622, 623, 309 A.2d 352, 353 (1973) (per curiam); Pa. R. Crim. P. 323(b). See *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974); *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974); *Commonwealth v. Agie,* 449 Pa. 187, 189, 296 A.2d 741 (1972).

Mr. Chief Justice JONES, Mr. Justice O'BRIEN, Mr. Justice NIX and Mr. Justice MANDERINO join in this concurring opinion.

---

* I also concur that in the circumstances of this case appellant's confession was not involuntary. See *Culombe v. Connecticut,* 367 U.S. 568, 601-02, 81 S. Ct. 1860, 1878-79 (1961). Compare *Commonwealth v. Simms,* 455 Pa. 599, 317 A.2d 265 (1974); *Commonwealth v. Eiland,* 450 Pa. 566, 301 A.2d 651 (1973).