337 A.2d 282
COMMONWEALTH of Pennsylvania,
Appellant,
v.
Ronald MILTON.

COMMONWEALTH of Pennsylvania,
Appellant,
v.
Ronald F. MILTON.

COMMONWEALTH of Pennsylvania,
Appellant,
v.
Thomas E. WORMSLEY (two cases).

Supreme Court of Pennsylvania.

Argued March 11, 1975.

Decided April 25, 1975.

536

John J. Hickton, Dist. Atty., Robert L. Eberhardt, Asst. Dist. Atty., for appellant.

John J. Dean, Pittsburgh, for appellees.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

EAGEN, Justice.

These appeals were consolidated for presentation to this Court, and will be disposed of in this one opinion. The background is this:

About 7:45 p. m. on November 21, 1973, Mrs. Cecelia Buczkowski was the victim of a purse snatching in the automobile parking area of a shopping center in

Pleasant Hills Borough, Allegheny County. Shortly thereafter, Mrs. Buczkowski was found, lying on the ground unconscious. She was removed to a hospital where she died two days later. In the course of the police investigation, Ronald Milton and Thomas E. Wormsley were questioned about the crime. They were later indicted for the murder of Mrs. Buczkowski and other charges related to the assault and theft. Each filed a pretrial motion to suppress evidence of his statements to the police. After evidentiary hearings, the trial court granted the motions. The Commonwealth filed these appeals.[1]

The testimony at the suppression hearings remained uncontradicted throughout and established these facts:

About one hour after the occurrence of the purse snatching, police officers of Pleasant Hills Borough had cause to pursue a "Blue Torino" automobile. During the chase the "Blue Torino" crashed into a pole and was substantially damaged. The driver, who was the sole occupant, fled on foot and escaped. A police search of the abandoned vehicle disclosed a sales slip on the front seat from Kaufman's department store located in the shopping center where Mrs. Buczkowski was assaulted. The sales slip was issued in the name of Richard A. Buczkowski, which is the name of the husband of the victim.

---

1. Appellate jurisdiction of appeals Nos. 38 & 39 is in the Superior Court, and these appeals were properly filed in that court. Appellate jurisdiction of appeals Nos. 9 & 18 is in this Court, and these appeals were properly filed here. Since all appeals were interrelated and arose as a result of the same incident, the appeals filed in the Superior Court were certified here.

The record establishes that as a result of the suppression of the challenged evidence the Commonwealth will be substantially handicapped in the prosecution of the indictments against Milton and Wormsley, because it will be unable to present all available relevant evidence. Hence, the Commonwealth has the right to appeal from the suppression orders. *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963).

Later the same night, about 10:00 p. m., Ronald Milton was taken into custody by the Pleasant Hills Borough police on a warrant issued by the authorities of nearby West Mifflin Borough, Allegheny County, charging him with having committed a robbery in that borough. After his arrest, Milton was warned of his constitutional rights as mandated by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The chief of police of Pleasant Hills Borough then, noting that the robbery charge from West Mifflin Borough involved a purse snatching, asked Milton if he had been near the Pleasant Hills Shopping Center earlier that evening. Milton said "no", but in a brief period of questioning that followed, he stated that the "Blue Torino" which the police pursued earlier in the evening was a "hot" car and the driver at the time of the chase was a Thomas Wormsley. Milton was then turned over to the custody of the West Mifflin Borough police.

About 1:00 p. m., on November 23, 1973, Milton appeared voluntarily at the Allegheny County Detective Bureau at the request of the Captain of Detectives. In answer to questions, Milton explained how he knew Wormsley was the driver of the "Blue Torino" the police chased on the night of November 21st. The interview lasted about one and three-quarters hours and was recorded on a typewriter. In this interview, Milton said nothing self-incriminating and at its conclusion he was permitted to leave.

A warrant charging murder then issued for Wormsley and he was taken into custody at his residence in Mc-Keesport about 12:15 a. m., on November 24th. He was escorted to the Allegheny County Detective Bureau arriving about 1:00 a. m. He was immediately advised of his *Miranda* rights and the reason for his arrest. After being "processed", questioning by the Captain of Detectives commenced about 1:15 a. m. Initially, Wormsley said nothing incriminating, but when he was informed

Milton had told the police he was the driver of the "Blue Torino", a "hot" car, he became "upset" and asked permission to phone a Samuel Gunter and a Gerald Parker. Permission was given and about 2:00 a. m., an effort was made to contact Gunter and Parker but without success. Wormsley then pressed the Captain of Detectives for a detailed account of what Milton had said. Sometime before 4:00 a. m., Wormsley admitted his involvement in the Buczkowski assault and theft. Then beginning at 4:00 a. m., and continuing for about one hour, he detailed the occurrence. This statement which was recorded on a typewriter, not only described Wormsley's participation in the Buczkowski crime, but also identified Milton, Gunter and Parker as active participants.

As a result of Wormsley's incriminating and accusatory statement, a warrant issued for Milton and he was taken into police custody at his residence about 10:35 a. m., on November 24th. Upon his arrival at the Allegheny County Detective Bureau about 11:10 a. m., he was immediately advised of the nature of the charges upon which he had been arrested, as well as his *Miranda* rights. Milton was also informed that Wormsley had implicated him in the Buczkowski assault and theft. Without hesitation, Milton admitted he participated and said he was ready to make a complete statement. The recording of the statement began shortly after 12:00 noon and was completed within two hours. Milton and Wormsley were arraigned at 3:15 p. m.[2]

Based on the foregoing, the trial court suppressed the evidence of everything Milton said to the police on November 23rd and 24th, and everything Wormsley said to the police on November 24th. We reverse these orders for the reasons that follow.

■ The suppression orders were based on the trial court's conclusion that there was an unnecessary delay

2. Gunter and Parker were arraigned at the same time.

between the arrest and arraignment of both Milton and Wormsley in violation of the Pennsylvania Rules of Criminal Procedure, Rule No. 118 [now 130], 19 P.S. Appendix, and this "unnecessary delay . . . caused" the challenged statements to be given. See *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972). But as the uncontradicted testimony demonstrated there was no "unnecessary delay" between Milton's arrest and his self-incrimination. His initial admission of involvement ensued within minutes of his arrival at the County Detective Bureau on November 24th, and his detailed statement of the crime and his participation therein was completed and recorded within a three-hour period. This cannot be viewed as the "unnecessary delay" contemplated by Rule 118. Cf. *Commonwealth v. Rowe*, 459 Pa. 163, 327 A.2d 358 (1974).

■■ While some time elapsed between Wormsley's arrest and his initial self-incrimination, evidentiary use of his statements to the police was not proscribed under Rule 118. Even assuming, there was "unnecessary delay" between his arrest and self-incrimination,[3] this does not "ipso facto" render evidence of his self-incriminations inadmissible at trial. *Commonwealth v. Tingle*, 451 Pa. 241, 301 A.2d 701 (1973). In order for such evidence to be excluded, under Rule 118, the evidence must be reasonably related to the delay. In other words, a "nexus" between the delay and the challenged evidence must be established and the burden of proving this "nexus" is upon the party who asserts it. *Commonwealth v. Goodwin*, 460 Pa. 516, 333 A.2d 892 (1975). This "nexus" was not proven here.

Orders reversed.

---

**3.** The time elapsing between the obtaining of a confession and the arraignment is not relevant to the issue of "unnecessary delay" under Rule 118. See *Commonwealth v. Rowe*, supra.

POMEROY and NIX, JJ., agree with the result because they do not believe the delay in either case constituted an unnecessary delay.

ROBERTS, J., files a concurring and dissenting opinion in which MANDERINO, J., joins.

ROBERTS, Justice (concurring and dissenting).

The majority concedes that Wormsley's statement was obtained by the Commonwealth during a period of unnecessary delay between arrest and arraignment, in violation of the command of Pa.R.Crim.P. 116 (now renumbered as Rule 122). I cannot agree that the statement had "no reasonable relationship to the delay whatsoever." *Commonwealth v. Futch,* 447 Pa. 389, 394, 290 A.2d 417, 419 (1972); *Commonwealth v. Dixon,* 454 Pa. 444, 445, 311 A.2d 613, 614 (1973); *Commonwealth v. Wayman,* 454 Pa. 79, 83, 309 A.2d 784, 787 (1973); *Commonwealth v. Dutton,* 453 Pa. 547, 550, 307 A.2d 238, 240 (1973); *Commonwealth v. Tingle,* 451 Pa. 241, 244, 301 A.2d 701, 702 (1973). Therefore I must conclude that the statement was properly suppressed. *Commonwealth v. Futch,* supra; *Commonwealth v. Barilak,* 460 Pa. 449, 333 A.2d 859 (1975); *Commonwealth v. Sanders,* 458 Pa. 281, 327 A.2d 43 (1974); *Commonwealth v. Johnson,* 459 Pa. 171, 327 A.2d 618 (1974); *Commonwealth v. Cherry,* 457 Pa. 201, 321 A.2d 611 (1974); *Commonwealth v. Hancock,* 455 Pa. 583, 317 A.2d 588 (1974); *Commonwealth v. Williams,* 455 Pa. 569, 319 A.2d 419 (1974); *Commonwealth v. Dixon,* 454 Pa. 444, 311 A.2d 613 (1973); *Commonwealth v. Wayman,* 454 Pa. 79, 309 A.2d 784 (1973); *Commonwealth v. Dutton,* 453 Pa. 547, 307 A.2d 238 (1973); *Commonwealth v. Tingle,* 451 Pa. 241, 301 A.2d 701 (1973); see *Geiger Appeal,* 454 Pa. 51, 309 A.2d 559 (1973); *Commonwealth v. Peters,* 453 Pa. 615, 306 A.2d 901 (1973).

There can be no doubt that the delay in arraignment here was unnecessary, for the Commonwealth admits

that the only reason for the delay was the desire to extract a confession.[1] Delay in arraignment for the sole purpose of obtaining incriminatory statements is always unnecessary. *Commonwealth v. Barilak,* supra; *Commonwealth v. Johnson,* supra; *Commonwealth v. Cherry,* supra; *Commonwealth v. Williams,* supra; *Commonwealth v. Dixon,* supra; *Commonwealth v. Tingle,* supra.[2]

The majority, however, finds no "nexus" between the delay and the making of the inculpatory statement. While it is true that a defendant must show "a nexus between the delay and the challenged evidence," *Commonwealth v. Tingle,* supra, this requires only a showing that the challenged evidence was obtained during a period of unnecessary delay rather than a period of necessary delay which was followed by an unrelated period of unnecessary delay. Compare *Commonwealth v. Rowe,* 459 Pa.

1. The following colloquy between the court and the attorney for the Commonwealth occurred during closing argument at the suppression hearing:

   "THE COURT: Let me ask you one other question. Wasn't the sole purpose of the detention in this case directed solely and exclusively at obtaining a confession from Mr. Wormsley? Was there any other reason for the delay between the time of arrest and taking him to arraignment?

   "MR. JOHNSON: Under the present state of the record, Your Honor, there was not."

   Later in the argument, the point was further discussed in the following exchange:

   "MR. JOHNSON: The purpose of any delay, if one existed, Your Honor, was to conduct a further investigation of this case. At this point these police—

   "THE COURT: What other investigation did they conduct now, outside of the taking of a statement from Wormsley?

   .    .    .    .    .    .    .    .    .    .    .

   "MR. JOHNSON: The Commonwealth does not submit that they did conduct any outside of that, Your Honor."

2. The Commonwealth's reliance on the opinion announcing the judgment in *Commonwealth v. Blagman,* —— Pa. ——, 326 A.2d 296 (1974), is entirely misplaced because that opinion represented the views of only two members of this Court. The holding of *Blagman* is to be found in the concurring opinion, id. at ——, 326 A.2d at 300, which was joined by five members of this Court and rested on the conclusion that the claim of unnecessary delay had not been preserved for appellate review.

163, 327 A.2d 358, 361–62 (1974) with *Commonwealth v. Tingle,* supra, 451 Pa. at 246–47, 301 A.2d 703–04 (1973). In this case, the nexus between the unnecessary delay and the challenged statement was indubitably established by the testimony of the Commonwealth's own witnesses.

As one commentator has recently written:

"In [*Commonwealth v. Wayman*] it was not the length of time between arrest and confession that established a 'reasonable relationship' between the evidence and the delay. Rather, the relationship was established because delay had been manufactured by police to allow opportunity to elicit a confession. Therefore, to argue that the length of the delay itself should *in any way be relevant to the issue at hand is to ignore* the fact that the length of time between arrest and confession is determined merely by the power of the accused to withstand interrogation or by his inability to satisfy his interrogators. It is hence absurd to suggest that the strength of the relationship between the evidence given and the 'unnecessary delay' is dependent upon the number of hours the accused can resist questioning. On the contrary, since the evidence follows the interrogation during 'unnecessary delay,' and the delay in turn is created to permit such questioning, once the interrogation is begun the relationship is established independent of how long the delay lasts. It is the action of the police, therefore, that establishes the connection between unnecessary delay and the evidence obtained."

Comment, Admissibility of Confessions Obtained Between Arrest and Arraignment: Federal and Pennsylvania Approaches, 79 Dick.L.Rev. 309, 347 (1975).

Moreover, it is clear from the suppression court's discussion of the legal standard to be applied that the court found the delay was a cause of the statement. Surely a defendant is not required to exclude all causal factors

other than delay, for we have held that all evidence obtained during a period of unnecessary delay must be excluded unless it "has no reasonable relationship to the delay whatsoever." *Commonwealth v. Futch,* supra, 447 Pa. at 394, 290 A.2d at 419; *Commonwealth v. Dixon,* supra, 454 Pa. at 445, 311 A.2d at 614; *Commonwealth v. Wayman,* supra, 454 Pa. at 83, 309 A.2d at 787; *Commonwealth v. Dutton,* supra, 453 Pa. at 550, 307 A.2d at 240; *Commonwealth v. Tingle,* supra, 451 Pa. at 244, 301 A.2d at 702. Thus, we have repeatedly held that precipitation of an incriminatory statement by the results of a polygraph test does not destroy the nexus between the delay and the statement so precipitated. *Commonwealth v. Barilak,* supra (polygraph test combined with confrontation with other evidence of guilt); *Commonwealth v. Sanders,* supra; *Commonwealth v. Cherry,* supra; *Commonwealth v. Dixon,* supra. Moreover, we have considered precisely the type of situation here and held that confrontation with an accusation by a co-defendant is likewise insufficient to destroy the nexus between unnecessary delay and a statement obtained during that delay. *Commonwealth v. Johnson,* supra; see *Commonwealth v. Doamaral,* —— Pa. ——, 327 A.2d 273 (1975) (confrontation with accusatory statement by witness).

I am unable to see any basis for disturbing the finding by the suppression court that the required nexus between the unnecessary delay and the challenged statement was present. I would therefore affirm the order suppressing Wormsley's statement.

Because I agree that Milton's statement was not obtained during a period of unnecessary delay, I agree that the order suppressing his statement must be reversed.

MANDERINO, J., joins in this concurring and dissenting opinion.