## Commonwealth *v.* Edwards, Appellant.

Submitted December 6, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Ronald J. Brockington,* for appellant.

*James J. Wilson, Mark Sendrow,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY VAN DER VOORT, J., December 1, 1975:

Appeal is taken to our Court from Judgment of Sentence rendered by Judge Merna MARSHALL following conviction on counts of burglary, larceny, receiving stolen goods, carrying a concealed deadly weapon, and carrying firearms without a license. Appellant challenges the lower court's denial of his application to suppress a confession given to the police. Post trial motions were made and denied.

On May 10, 1971, Paul Taylor, a policeman of the City of Philadelphia was shot by one Rufus Williams. Rufus Williams said that he had bought the gun which he used from the appellant Harry Edwards. Harry Edwards was arrested as a material witness and was taken to the Police Administration Building at 6:00 A.M. on May 11, 1971. He was given his Miranda warnings and was questioned by Detective Lamont Anderson from 9:10 to 9:30 A.M., during which time he said that he had sold the gun to Rufus Williams. Appellant submitted to a polygraph test from 9:30 A.M. to 12:30 P.M. Immediately after the polygraph test had been completed, the detectives learned that the gun used to slay Officer Taylor had been stolen in a burglary on March 25, 1971. The appellant was questioned from 12:26 P.M. to 12:50 P.M., as to his possible participation in the burglary of the gun. During this questioning, he stated he had no knowledge of the burglary. At 1:05 P.M., Detective Bocchinfuso of the Major Crimes Division, after giving Edwards Miranda warnings continued the interview until 1:30 P.M., at which time appellant was permitted to make a phone call and was given a meal which ended at 2:05 P.M. The interview continued until 2:55 P.M., when

appellant agreed to another polygraph examination. It began at 3:30 P.M., and was concluded at 6:55 P.M., when appellant admitted he stole the gun in a burglary of a house. The appellant agreed to make a formal statement, he was given another meal from 7:30 to 8:45 P.M., the statement was completed, typed and signed at 11:25 P.M., thereafter he was processed and given a preliminary hearing.[1]

From the chronology of the Detective Bureau it will be seen that appellant was not subjected to long interrogation. He was questioned in five separate intervals for a total of two hours and nine minutes about two entirely separate offenses. He was interrogated first concerning the unlawful selling of a gun; then second concerning the burglary. The Judge at the suppression hearing found that the confession was voluntary and there was sufficient evidence to support this finding.

Appellant claims that pursuant to Pa.R.Crim.P. 118 (now 130)[2] and under the authority of *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), *Commonwealth v. Eiland*, 450 Pa. 566, 301 A.2d 651 (1973) and their progeny[3] that inasmuch as he was held in custody for 12 hours and 55 minutes before he confessed and a

---

1. The precise time of the preliminary hearing does not appear in the record. Appellant does not challenge probable cause for arrest, the giving of Miranda warnings or that arraignment did occur.

2. Pennsylvania Rule of Criminal Procedure 118 (now Rule 130):

"When a defendant has been arrested without a warrant, he shall be taken without unnecessary delay before the proper issuing authority where a complaint shall be filed against him.

"(a) If the complaint charges a court case, the defendant shall be given an immediate preliminary arraignment."

3. Especially *Commonwealth v. Dutton*, 453 Pa. 547, 307 A.2d 238 (1973); *Commonwealth v. Dixon*, 454 Pa. 444, 311 A.2d 613 (1973) and *Commonwealth v. Williams*, 455 Pa. 569, 319 A.2d 419 (1974).

total of 18 hours and 30 minutes before preliminary arraignment his confession should have been suppressed.

This case presents squarely the issue between the right of the people to have serious crime discovered and the right of the defendant to be taken before a Magistrate without unnecessary delay after arrest.

The mere passage of time between arrest and preliminary arraignment does not of itself require the suppression of a confession secured in the interim. It is what occurs during the delay that is important. The totality of the circumstances is controlling.

Here appellant after his arrest was held for 7 hours during which period of time he was questioned for a total of 44 minutes concerning the gun he sold to Williams and was given a polygraph examination which consumed 3 hours. At the conclusion of the first polygraph the Detectives learned from sources other than appellant that the gun in question had been taken in a burglary. He was held for an additional 5 hours and 55 minutes during which period of time he was questioned for a total of 1 hour and 25 minutes in three different intervals and was given a polygraph which consumed 3 hours and 25 minutes. During these periods of time he was given opportunities to go to the lavatory, to make a telephone call and to have food when he was hungry.

In circumstances such as these where a suspect has indicated to the detectives after receiving Miranda warnings that he is willing to talk and then gives false answers to questions, he encourages delay and retards a prompt preliminary arraignment. We believe he thereby impliedly allows the officials, who have him in custody, a reasonable length of time to interrogate him. Most people who commit criminal offenses (except professional and organized criminals) want to confess if given a fair opportunity to do so. Without confession, attempts at rehabilitation are of doubtful value; with it rehabilitation can be of much value. In the instant case there would

be no practical way of discovering this high crime of burglary except as was done here, that is to question the suspect who was willing to be questioned.[4]

Does the law permit one arrested without a warrant to extend for a reasonable time his procedural right to a preliminary hearing by being willing to be questioned? We believe it does and that appellant did so extend this time requirement.

Judgment of sentence is affirmed.

CONCURRING OPINION BY PRICE, J.:

I concur in the result reached by the majority solely on the basis that the confession was admissible under the authority and test of *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972). *See Commonwealth v. Wormsley*, 461 Pa. 535, 337 A.2d 282 (1975).

DISSENTING OPINION BY HOFFMAN, J.:

I cannot agree with the Majority's conclusion that appellant's confession was properly admitted into evidence.

If we disregard the time appellant was questioned as a material witness and consider only the investigation of appellant's possible participation in the burglary, appellant's confession occurred approximately six and one-half hours after his arrest. Appellant was interrogated from 12:30 p.m. until 12:50 p.m., but denied any knowledge of the crime. At 1:05 p.m., a second detective resumed the interrogation. Except for a period in which appellant was given a meal, the interrogation continued until 2:55 p.m., when appellant agreed to submit to a polygraph examination. Throughout the questioning, appellant denied any involvement in the burglary. Appel-

---

4. The possibility that the interrogation might exculpate the suspect should not be overlooked.

lant was left alone from 2:55 p.m. until 3:30 p.m., when the polygraph test commenced. The examination was concluded at 6:55 p.m. At 6:55 p.m., appellant was confronted with the results of the polygraph test and gave an oral statement fully admitting his participation in the crime.

Appellant contends that the confession should have been suppressed as the product of an unnecessary delay in violation of Rule 130 of the Pennsylvania Rules of Criminal Procedure. The seminal case of *Commonwealth v. Futch*, 447 Pa. 389, 290 A. 2d 417 (1972), held that evidence obtained by the Commonwealth cannot be introduced against an accused if: (1) the evidence was obtained during an "unnecessary delay" between arrest and arraignment; (2) the evidence is prejudicial to the accused; and (3) the evidence is reasonably related to the delay.

The Commonwealth's first argument seems to be that six and one-half hours is simply not a sufficient length of time to constitute an unnecessary delay. Several Supreme Court decisions flatly reject this contention: *Commonwealth v. Bey*, 462 Pa. 533, 341 A.2d 907 (1975) (5 hours) ; *Commonwealth v. Barilak*, 460 Pa. 449, 333 A. 2d 859 (1975) (5¼ hours) ; *Commonwealth v. Johnson*, 459 Pa. 171, 327 A.2d 618 (1974) (4 hours).

The Commonwealth next argues that the delay was "necessary." In *Futch, supra*, at 392, 290 A. 2d at 418, the Court stated that " '[n]ecessary delay can reasonably relate to time to administratively process an accused with booking, fingerprinting and other steps and sometimes even to make same [sic] limited preliminary investigation into his connection with the crime for which he was arrested, especially when it is directed to possible exculpation of the one arrested.' *Adams v. United States*, 399 F. 2d 574, 579 (D.C. Cir. 1968) [BURGER, J., concurring]." The Court in *Commonwealth v. Williams*, 455 Pa. 569, 573, 319 A. 2d 419 (1974), stressed that

". . . pre-arraignment delay will always be unnecessary unless justified by administrative processing—fingerprinting, photographing, and the like." In the instant case, the Commonwealth does not contend that portions of the six and one-half hour interval between arrest and confession were consumed by this type of administrative procedure. The Commonwealth does, however, attempt to justify the delay by pointing to the length of time consumed by the polygraph examination. Whether the administration of a polygraph test constitutes the kind of "limited preliminary investigation" envisioned by *Futch* has not been decided by our Supreme Court.[1] In *Commonwealth v. Cherry*, 457 Pa. 201, 205, 321 A. 2d 611, 613 (1974), the Court specifically rejected the Commonwealth's contention that it is permissible to continue an investigation after arrest in order to "get the facts straight": "Rule [130] . . . and our decision in *Futch* . . . are specifically designed to put a stop to the practice of arresting an individual and holding him during a lengthy period while continuing the investigation before arraigning him." This is especially so where, as here, the accused denies all participation in the offense under investigation. *See also, Commonwealth v. Bey,* supra; *Commonwealth v. Johnson,* supra. Thus, the six and one-half hour delay in the present case was not justifiable as a necessary delay.

It is obvious that appellant's confession was highly prejudicial. It must be determined, however, whether the evidence obtained bears a reasonable relationship to the delay. The Commonwealth argues that appellant con-

---

1. The Commonwealth relies on the case of *Commonwealth v. Blagman,* 458 Pa. 431, 326 A.2d 296 (1974), for the proposition that a polygraph examination is a permissible preliminary investigation under *Futch* and thus constitutes a necessary delay. The opinion in *Blagman,* however, expressed the view of only two members of the Supreme Court, and cannot be cited as binding precedent.

fessed because he was confronted by the negative results of his polygraph examination, and thus the confession was not the product of the delay. This argument cannot survive the Supreme Court's decision in *Commonwealth v. Doamaral*, 461 Pa. 517, 522, 337 A.2d 273, 275 (1975): "We did not say in *Futch* that the unnecessary delay must be the *sole* cause of the confession for the confession to be inadmissible. We said that all evidence obtained during an unnecessary delay, except that which has no reasonable relationship to the delay whatsoever, should be excluded. . . . The fact that the confession may have also been related to other events which occurred during the delay does not eliminate its relationship with the delay." The instant case is similar to *Commonwealth v. Barilak*, supra, where appellant confessed upon being informed that blood in her car matched that of the victim, and *Commonwealth v. Bey*, supra, where appellant confessed after learning that another individual had implicated him in the crime. In both cases, the Supreme Court ruled that the confession was the product of an unnecessary delay and thus was inadmissible. The same rule applies here.

I would reverse and remand for a new trial.

JACOBS and SPAETH, JJ., join in this opinion.

---

DISSENTING OPINION BY SPAETH, J.:

It is evident from the tone of the majority opinion that the majority disagrees with *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972). That disagreement, however, is quite irrelevant; since *Futch* is a decision of the Supreme Court, we are obliged to follow it, if it is applicable. Nor should we shrink from that obligation; for if judges do not follow the law, who will? As Judge HOFFMAN'S opinion demonstrates, *Futch* is applicable; nor does Judge PRICE'S citation, in his concurring opinion, of *Commonwealth v. Wormsley*, 461 Pa. 535, 337

A.2d 282 (1975), affect Judge HOFFMAN'S analysis, for in *Wormsley,* as to one defendant there was no unnecessary delay, and as to the other there was no nexus between the delay and the challenged evidence.

The obligation of a lower court to follow the decision of a higher court does not, however, preclude the lower court from commenting on the decision if it believes that comment may be helpful to the higher court in its review and resolution of what is obviously a continuing problem. It is with that belief that the following comment is respectfully submitted.

Lacking specific and practical guidelines, police departments and prosecutors, it seems to me, can only be uncertain as to how much time is permissible for investigative questioning without jeopardizing the validity of a resulting confession. This uncertainty would be considerably alleviated if the Criminal Rules Committee of the Supreme Court would promulgate appropriate rules, as has been done, for example, with respect to search warrants. Pa. R. Crim. P. 2001-2010.

The Committee might look for guidance to §130.2 of the American Law Institute Model Code of Pre-Arraignment Procedure (Proposed Official Draft, April, 1975.)[1] This Section sets a maximum period during which a suspect can be held for investigation and questioning before being presented to a judicial officer.[2] The Note accompanying the Section summarizes its provisions as follows:

> "This Section provides the structure for the Code's provisions relating to release from custody, screening at the stationhouse and prompt presentment to a judi-

---

1. The section is set out in full in the Appendix to this opinion.

2. Although the Model Code sets the maximum time at five hours, any reasonable specified time period would serve the same purpose. *See* Section 3501(c) of Title II of the Omnibus Crime Control and Safe Streets Act of 1968 (six hours) and D.C. CODE §4-140(a) (1973) (three hours).

cial officer. In broadest terms it requires that unless the prosecutor has charged or is considering charging an arrested person, within two hours he will be released from custody outright or with a citation to appear, unless the station officer decides the circumstances require an additional period of screening—not to exceed three hours. Even if the arrested person has been charged he may be released by the station officer on recognizance, bail or other condition, depending on the applicable statutory provisions on pretrial release. And, in any event, he must be produced promptly before a judicial officer if he is not so released."

Thus, at the end of the mandatory two to five-hour period, the arrested person, if not released, "shall be brought before a judicial officer without unnecessary delay." §130.2(1).(b). Although the unfortunate phrase "unnecessary delay" still appears, it is clearly defined as excluding "[d]elay for the purpose of facilitating investigation regarding the arrested person. . . ."[3]

Such provision for a maximum period for pre-arraignment investigation provides, I suggest, a satisfactory balance of the competing interests of the police and the arrested or detained person: "the administrative complexities of processing cases" versus "the coercive effects of detention which may increase as the duration of the detention is prolonged." To be sure,

"... [a]ny specific time limit upon custody is necessarily somewhat arbitrary. But such arbitrary line-drawing is consistent with the premise of the Code that *police and prosecutors should be explicitly informed what they are, and are not, authorized to do,* rather than being forced to await a court interpre-

---

3. This is not inconsistent with Pennsylvania case law, which provides that "[t]he only delay permissible is that reasonably required for the administrative processing of the accused citizen." *Commonwealth v. Dixon,* 454 Pa. 444, 447, 311 A.2d 613, 614 (1973).

tation of what constitutes 'unnecessary' or 'undue' delay on a case-by-case basis." (Emphasis supplied.)

No doubt reasonable persons will differ as to just what procedures should be specified, and I do not mean to press for any particular ones. I simply suggest that experience with the *Futch* rule has shown the desirability of specification.

## APPENDIX

Section 130.2.  Disposition of Arrested Persons

(1) Disposition: Release, Production before Judicial Officer. Unless an order is entered under Subsection (2) of this Section, not later than [two] hours after an arrested person is brought to the police station the station officer shall make one of the following dispositions:

(a) If the station officer concludes that there is no reasonable cause to believe that the arrested person has committed a crime, and no indictment, information or complaint charging such person with a crime has been returned or issued, the station officer shall order the arrested person released forthwith. [Add here any applicable provision for release by station officer to pretrial diversion programs.]

(b) If (i) an indictment, information or complaint charging the arrested person with a crime has been or is returned or issued, or (ii) the prosecuting attorney advises the station officer that he intends to charge such person with a crime or that he needs additional time to decide whether to so charge him, the station officer shall, in any case where authorized to do so [by statutory provisions relating to pretrial release and bail] release the arrested person on his own recognizance or admit him to bail. If the arrested person is not so released, he shall be brought before a judicial officer without unnecessary delay. Delay for the purpose of facilitating investigation regarding the arrested person shall not constitute a necessary delay.

(c) Subject to Subsection (5), if none of the actions referred to in clauses (i) or (ii) of paragraph (b), above, have been taken within said [two-hour] period, the station officer shall release the arrested person subject to a citation to appear in court in accordance with the provisions of Section 130.3.

(d) Notwithstanding the foregoing provisions, an arrested person may be continued in custody if he is represented by counsel and he and his counsel both consent to such custody.

(2) Order for Screening in Certain Cases. The station officer may, in lieu of making one of the dispositions authorized by Subsection (1) of this Section, order that the arrested person be detained for a period of screening, but only if he concludes

(a) that there is reasonable cause to believe that the arrested person has committed [one of the following crimes:

(i) . . . . .

(ii) . . . . .

(iii) . . . .] ;

and

PART 1B—Statute                           § 130.2

(b) that the investigation permitted during the period of screening is reasonably necessary

(i) to determine whether a complaint should be issued charging such person with a crime;

(ii) to determine the crime or crimes to be specified in the complaint;

(iii) to obtain information likely to be of significant aid in averting harm to any person or preventing the loss of property of substantial value; or

(iv) to obtain information likely to be of significant aid in discovering the identity or location of other persons who may have been associated with the arrested person in the crime for

which he was arrested, or in preventing the loss of evidence relating to such crime.

(3) Duration of the Period of Screening. The period of screening authorized by Subsection (2) of this Section shall not exceed the time actually necessary to carry out lawful investigation for the purposes authorized in subparagraphs (i)-(iv) thereof, and in any event shall not exceed [three] hours.

(4) Disposition at End of Period of Screening. If an order is entered under Subsection (2) of this Section, at the end of the period of screening the station officer shall make one of the dispositions authorized by paragraphs (a)-(c) of Subsection (1).

(5) Delay Resulting from Inability to Communicate with Prosecutor. If the station officer makes reasonable efforts to communicate with the prosecuting attorney but is unable to do so within the [two-hour] period referred to in Subsection (1), or the period of screening referred to in Subsection (2), he may delay the disposition of the arrested person pursuant to paragraphs (a)-(c) of Subsection (1) until he communicates with the prosecuting attorney. No such delay shall result in a delay in bringing the arrested person before a judicial officer pursuant to paragraph (b) of Subsection (1) or in extending the period during which a waiver of the right to counsel may be sought or during which an arrested person may be questioned.

(6) Refusal of Complaint. Notwithstanding any other provision of this Section, if at any time the prosecuting attorney determines that a complaint charging the arrested person with a crime shall not be issued, the station officer shall order the arrested person released forthwith.

ALI Model Code of Pre-Arraignment Procedure §130.2 (Proposed Official Draft, April, 1975).