473 A.2d 147
**COMMONWEALTH of Pennsylvania**
v.
**Gary Lee ROBERSON, Appellant.**
Superior Court of Pennsylvania.
Submitted May 11, 1983.
Filed Feb. 24, 1984.

438

Margaret M. Boyce, Philadelphia, for appellant.

Jane Cutler Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, WATKINS and MONTGOMERY, JJ.

WICKERSHAM, Judge:

Gary Lee Roberson is presently serving a term of imprisonment of not less than ten nor more than twenty years based upon convictions obtained in a jury trial conducted in March of 1976 before the Honorable Lawrence Prattis. Roberson's convictions included robbery and rape. A direct appeal to our court resulted in an affirmance of the judgment of sentence. *Commonwealth v. Roberson,* 258 Pa.Super. 471, 393 A.2d 455 (1978) (allocatur denied).[1]

A fair distillation of the underlying facts was presented in appellee's brief as follows:

Defendant, a prisoner, seeks collateral relief from his sentences for a notorious and atrocious crime. Defendant and his co-defendants were convicted for breaking into, ransacking and attempting to burn the Porreca

---

1. Three of defendant's co-defendants appealed to this Court. *Commonwealth v. Moore,* 283 Pa.Super. 609, 427 A.2d 1192 (1980) (affirming judgment of sentence totalling 20–40 years imprisonment); *Commonwealth v. Weeks,* 248 Pa.Super. 617, 374 A.2d 713 (1977) (affirming judgment of sentence totalling 20–50 years imprisonment and 60 years probation); *Commonwealth v. Stewart,* 245 Pa. 614, 372 A.2d 429 (1977) (affirming judgment of sentence totalling 15–30 years imprisonment and 60 years probation).

home, for assaulting and robbing the Porreca family, and for raping and sodomizing the women.

On the evening of January 12, 1975, Roland Porreca answered the doorbell at his home in Philadelphia (N.T. 32), and defendant burst into the house with several other men. When one of the intruders smashed a flower pot over Mr. Porreca's head (N.T. 34), his wife, Diane, attempted to assist him, but was thrown to the floor (N.T. 154). The men then ransacked the house (N.T. 35, 154).

Leslie, the Porreca's seventeen year old daughter, was upstairs in her bedroom doing her homework when she heard the commotion (N.T. 90–91). She attempted to call police on an upstairs phone, but found the line disconnected (N.T. 91). One of the intruders accosted Leslie, demanded money and slapped her (N.T. 95). At knifepoint, he forced her to go downstairs where her parents had been forced to lie on the living room floor (N.T. 36, 95). Leslie identified defendant from her good view of him at this time (N.T. 103–107).

One of the robbers took Leslie to the foyer and forced her to lie down and undress (N.T. 95–96). The man tried to rape Leslie (N.T. 96), then demanded more money and forced her to look throughout the house for it (N.T. 96). He took her to a utility room, forced her to lie down again, told her to 'grind,' and then lay on top of her (N.T. 98).

While Leslie was being assaulted, her parents were brutalized by defendant and his companions. Both were forced to lie on the floor. When Mrs. Porreca attempted to escape, she was thrown back on the floor, beaten and kicked in the head (N.T. 166). Her hands were tied behind her back (N.T. 156). Roland Porreca was kicked and beaten about the head (N.T. 155). One of the vandals put a gun to his groin and told him, '. . . your wife' (N.T. 37, 156). When Mr. Porreca refused, the man said, 'I'll do it' (N.T. 37). One of the men began tearing Mrs. Porreca's clothes off (N.T. 157). As Mr. Porreca rose to protect her he was knocked unconscious (N.T. 38). He

lay helpless on the floor as defendant's accomplices raped his wife who lay beside him.

One of the men held Diane Porreca's legs apart as another raped her while a gun was held to her head (N.T. 157–158). She was forced to turn over on her stomach and was stabbed in the upper thigh (N.T. 158). She was raped and buggered repeatedly (N.T. 158, 332), while defendant sat on her unconscious husband (N.T. 159). Defendant stuck his fingers into her vagina and anus and said, 'She stinks' (N.T. 159).

The beatings inflicted by defendant and his companions seriously injured both Diane and Roland Porreca. Roland Porecca was beaten so badly about the head and face that he was unable to wear glasses for a week. He sustained lacerations and bruises of the head, face and arm (N.T. 49). In addition to the stab wound, Diane Porreca incurred a broken wrist (N.T. 327), lacerations of the head (N.T. 326), and extensive injuries of her genitals and anus (N.T. 329).

Defendant and his accomplices also robbed the Porreca family, taking jewelry, money, a radio, a camera and other items (N.T. 45, 101, 167). In addition, Leslie's high school ring was pulled from her finger just as her mother's wedding band was [w]renched from her finger (N.T. 101, 166).

When her tormentors finally left, Mrs. Porreca ran out of the house wearing the only clothing the attackers had left on her body—her torn blouse (N.T. 106–161). Leslie, not aware her mother had left, looked for her in the living room. Not finding her there she looked up the stairway, and saw the reflection of flames where her bedroom had been (N.T. 99). Defendant and his accomplices had set five separate fires in the house (N.T. 232).

Defendant, then 17 years, 5 months old, was arrested on January 23, 1975, and, following police consultation with his mother, was taken to the Police Administration Building for questioning. He confessed his part in these atrocious crimes.

After a certification hearing, defendant was transferred to stand trial as an adult. Following litigation of numerous pre-trial motions, defendant was tried before the Honorable Lawrence Prattis and a jury from March 10 to March 16, 1976. Defendant was convicted of arson, rape, attempted rape, robbery, burglary, aggravated assault, weapons offenses, and conspiracy (Indictment Nos. 1028–1033, 1035–1039, July Sessions, 1975). Post-verdict motions were denied and Judge Prattis sentenced defendant to concurrent terms of ten to twenty years imprisonment for the robbery of Roland Porreca (No. 1029), the robbery of Diane Porreca (No. 1030), and the rape of Diane Porreca (No. 1032).

Defendant, by the Defender Association of Philadelphia, appealed to this Court which affirmed the judgment of sentence. *Commonwealth v. Roberson*, 258 Pa. [Super.] 471, [393 A.2d 455] (1978) (allocatur denied).

Brief for Appellee at 1–4 (footnotes omitted).

Defendant subsequently filed *pro se* a petition for relief under the Post Conviction Hearing Act.[2] Present counsel, Margaret M. Boyce, Esquire, was appointed and filed an amended petition. Defendant's petition was denied following an evidentiary hearing by the Honorable Charles L. Durham. This appeal followed.[3]

**2.** Act of Jan. 25, 1966, 1580, § 1, 19 P.S. § 1180–1 *et seq.* reenacted as Act of May 13, 1982, No. 122, 82, 42 Pa.C.S.A. § 9541 *et seq.*

**3.** In her brief for the appellant, Margaret M. Boyce, Esquire, presents the following issues for our consideration:

1. Was trial counsel who also represented Appellant in a prior Superior Court Appeal, ineffective for failure to preserve an issue for Appeal?

2. Should Appellant's confession have been suppressed since he was a juvenile (17 years of age) at the time of his arrest and confession, because he was not given an opportunity, prior to receiving his *Miranda Rights*, of consulting with an interested adult, in accordance with *Commonwealth v. McCutchen*, 453 Pa. 90, 343 A.2d 669 (1975)?

3. Did the PCHA Court in not ordering a new trial when it determined that Appellate counsel tried to preserve the *McCutchen* issue but it was due to a court error that an addendum brief was not filed by the Quarter Session clerk with the Superior Court and that

In this appeal, appellant claims that trial counsel was ineffective in failing to preserve an issue for appeal.

The test for evaluating a claim of ineffective assistance of counsel is whether the record supports a conclusion that the particular course chosen by counsel had some reasonable basis designed to effectuate his clients' interest. In making this assessment, we are not to employ a hindsight evaluation to determine whether there was a reasonable basis for the course of action actually selected. *Commonwealth v. Musi,* 486 Pa. 102, 404 A.2d 378 (1979); *Commonwealth v. Hosack,* 485 Pa. 128, 401 A.2d 327 (1979); *Commonwealth v. Weathers El,* 485 Pa. 28[,] 400 A.2d 1295 (1979); *Commonwealth v. Treftz,* 485 Pa. 297, 401 A.2d 1325 (1979); *Commonwealth v. Williams,* 485 Pa. 137, 401 A.2d 331 (1979). *Commonwealth ex rel. Washington v. Maroney*[,] 427 Pa. 599, 235 A.2d 349 (1967). Counsel will not be deemed ineffective once we are able to conclude that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interest. *Commonwealth v. Musi, supra; Commonwealth v. Sherard,* 483 Pa. 183, 394 A.2d 971 (1978); *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977); *Commonwealth ex rel. Washington v. Maroney, supra.*

*Commonwealth v. Tabron,* 502 Pa. 154, at 157–58, 465 A.2d 637 at 638 (1983). Opinion by Mr. Justice Nix.

Appellant first complains that the lower court erred in not suppressing an inculpatory custodial statement given by him relating to the circumstances surrounding the rape and assaults. Appellant further argues that since the inculpatory custodial statement should have been suppressed, his trial counsel, who also represented appellant in a prior appeal to this court, was ineffective for failing to preserve

if the brief had been properly filed, the *McCutchen* issue would have been properly preserved requiring the grant of a new trial?

4. Should Appellant's confession have been suppressed since there was a 9½ hour delay between his arrest and his statement and an 18-hour delay between his arrest and the time of his arraignment?

Brief for Appellant at 1.

this suppression issue for appeal. We disagree for the reasons that follow:

In *Commonwealth v. Jenkins*, 499 Pa. 426, 453 A.2d 945 (1982) (Opinion by Justice Rolf Larsen) a similar question was before our supreme court:

Appellant's only other assertion of trial error is that his inculpatory statement read into evidence over objection was inadmissible as it violates this Court's so-called 'interested-adult' rule, sometimes referred to as the *McCutcheon* rule. *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669 (1975) (defendant's confession should have been suppressed because 'he was not given the benefit of parental or interested-adult guidance'.) We do not agree.

The record makes it abundantly clear that the behavior of the investigating officers in this case was an exemplary and successful attempt to comply with both the letter and the spirit of the interested-adult rule.

. . . .

It is apparent that the investigating officers were well aware of *McCutcheon* and did everything they could to comply with the 'interested-adult' rule.

. . . .

None of these specious assertions are supported by the record. Mr. Marshall [appellant's uncle] was certainly an interested and informed adult concerned with appellant's welfare, and the police first attempted to obtain the assistance of both appellant's father and grandmother prior to securing Mr. Marshall's assistance. Faced with the arraignment time constraints of *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977) (the 'six-hour' rule), the police wisely chose an eminently reasonable course of action in bringing Mr. Marshall to the station to consult with appellant. We will not require our law enforcement officers to conduct a survey of a defendant's relatives, interview them, and make an evaluation as to which is 'most interested' in the minor's welfare. From the foregoing, it is clear that appellant was given full and fair opportunity to consult with an interested and

informed adult prior to waiving his *Miranda* rights and that, therefore, the admission of his statement into evidence was not erroneous.[4]

---

[4] This author continues to espouse the view that the *McCutcheon* -'interested-adult' rule, which 'irrebuttably presumes that no one under the magic age of 18 years can make a statement to the police without the assistance of the indispensible "interested adult",' is an improper and unnecessary impediment to legitimate public interests in effective law enforcement. *See Commonwealth v. Henderson,* 496 Pa. 349, 359, 437 A.2d 387, 392 (1981) (Larsen, J., dissenting, joined by Flaherty and Kauffman, JJ.). As stated in my dissent in *Henderson,* the totality-of-the-circumstances approach, which considers the age of the defendant as *a factor* of voluntariness and not a *per se* trigger requiring specialized procedures, is the proper approach to take in these situations. Under this approach, appellant's waiver of his constitutional rights was clearly knowing, intelligent and voluntary.

*Id.,* 499 Pa. at 430, 433–34, 453 A.2d at 947–949.

In like fashion we find that instantly the record makes it abundantly clear that the behavior of the investigating officers in this case was an honest and straight forward attempt to comply with both the letter and the spirit of the interested-adult rule, which was the standard in effect at the time of Roberson's statement. The Supreme Court of Pennsylvania, however, has recently overruled the *per se* rule of *McCutchen.* In *Commonwealth v. Christmas,* 502 Pa. 218, 465 A.2d 989 (1983), Mr. Justice Flaherty expressed the opinion of the court in this manner:

The requisite measure of protection against admission of confessions derived as a result of the immaturity and inexperience of youth may be preserved through adherence to a presumption. Thus, we presume that a juvenile is incompetent to waive his rights without opportunity for consultation with an informed and interested adult; this presumption must be tested against the totality of circumstances surrounding a given waiver to determine whether the particular juvenile might in fact be competent to waive his rights without such opportunity. Thus, the *McCutchen* rule, requiring *per se* suppression of every statement obtained without there having been an opportunity for such consultation, is overruled. In its place, there shall exist a *presumption* that a statement derived in the absence of such an opportunity for consul-

tation is inadmissible, but that presumption shall be regarded as rebutted where the evidence *clearly demonstrates* that the juvenile was in fact competent to make a knowing, intelligent and voluntary waiver of his rights. Hence, while the presumption of inadmissibility will serve to protect the juvenile defendant, who, in the *usual* case, is likely to be disadvantaged by his youth, consideration will no longer be foreclosed with respect to the totality of circumstances present in a particular case that may render the juvenile's waiver of rights a knowing and voluntary one. Such circumstances include the manner in which the juvenile was treated by police authorities, as well as the juvenile's age, experience, background, intelligence, capacities, and prior record. See *Fare v. Michael C.*, 442 U.S. 707, 725 [99 S.Ct. 2560, 2571], 61 L.Ed.2d 197, 212–213 (1979).

*Id.*, 502 Pa. at 223–24, 465 A.2d 992.

■ We need not decide whether *Commonwealth v. Christmas, supra,* must be retroactively applied, because the officers' behavior surrounding appellant's arrest met both the requirements necessary to rebut the presumption under *Christmas* and the more stringent *per se* rule of *McCutchen.* There is clear evidence demonstrating that the juvenile in this case was in fact competent to make a knowing, intelligent and voluntary waiver of his rights. As was accurately set forth in appellee's brief:

When arrested, defendant was just seven months short of being eighteen years old. He had several previous encounters with the law. On at least two of those occasions, he was informed of his rights and on one occasion elected to remain silent, while on another he elected to give a statement.[12]

When the police came to defendant's house and requested that he accompany them to the police station for questioning, they first requested his mother's permission, informed the mother that they were investigating a robbery and arson, and gave the location of the incident (N.T.S.H. 71). The defendant's mother replied that she

had read about it in the newspaper, that it was all right with her for the police to take her son, and defendant also agreed to go (N.T.S.H. 72). Before defendant left, his mother asked him if he wanted her to accompany him to the interrogation and he replied 'no.' (N.T.S.H. 386).[13]

This defendant, like the defendant in *Veltre*,[4] was in the lower spectrum of normal intelligence and had completed at least the eighth grade.[14] He admittedly was repeatedly advised of his constitutional rights, and admittedly understood them completely.[15] Moreover, as evidenced by Detective McKinley's testimony at the suppression hearing, defendant knew about the crime for which he was to be questioned and, in the police car on the way to headquarters, he told the police he had heard about it (N.T.S.H. 123).

The record also shows that defendant was without mental disorder, and that he had no physical infirmities. Throughout the interrogation he was well treated and cooperated with the police. Defendant clearly was not an innocent, inexperienced youth. He had held several jobs in addition to being in the Job Corp. His testimony at the suppression hearing and at trial establishes that defendant was, at the time of this case, fully able to understand and respond to questions. If any juvenile is 'street wise'

**4.** The Commonwealth refers to *Commonwealth v. Veltre*, 492 Pa. 237, 424 A.2d 486 (1980). *Veltre* was a 3-3 decision of the Pennsylvania Supreme Court in which the Opinion in Support of Affirmance (opinion by Larsen, J.) held that the totality of the circumstances supported the lower court's conclusion that the juvenile appellant's waiver of his rights was knowingly, intelligently, and voluntarily entered despite the failure of the police to strictly comply with the "interested adult" rule. Although there was no majority opinion in *Veltre*, the decision established that some members of the court believed that the rigid *per se McCutchen* rule should be replaced with a more flexible approach. The Commonwealth's brief indicates that the facts of the instant case were similar to the factual circumstance in *Veltre* and that the totality of the circumstances supports the conclusion that Roberson's waiver of his rights was knowingly, intelligently, and voluntarily given.

We note that the Commonwealth's brief was filed prior to the Pennsylvania Supreme Court's decision in *Commonwealth v. Christmas*, 502 Pa. 218, 465 A.2d 989 (1983). The Commonwealth did not have the benefit of *Christmas* at the time its brief was prepared, and thus, relied on *Veltre*.

within the meaning of *Veltre* this defendant certainly was. Defendant's claim of violation of the 'interested adult' rule is meritless, and trial counsel may not be deemed ineffective for failing properly to preserve it for appellate review.

[12] Before the present case, defendant was arrested three times as a juvenile, twice at age seventeen. On March 25, 1972, defendant was arrested for vandalism, warned of his rights and made a statement at West Detective Division. At age seventeen, on December 2, 1974, defendant was arrested for burglary, was warned of his rights and declined to make a statement at West Detective Division. On December 15, 1974, defendant was arrested again at age seventeen for tampering with a witness. (P.C.H.A. Commonwealth Exhibit C–1).

[13] Defendant's further testimony that he later changed his mind and asked her to come with him, only to be told that she could not come, was refuted by the testimony of the police officers. Moreover, defendant asked for and was given permission to call his mother from the station (N.T.S.H. 256–57). Judge Spaeth's dissenting opinion in this case on direct appeal notes that this fact does not satisfy the requirement that defendant be afforded the opportunity to consult with an *'informed* adult, *i.e.,* one who has been informed of the suspect's constitutional rights.' 258 Pa. Superior Ct. 471, 476 n. 2 (original emphasis; citations omitted). However, defendant's prior contacts with the law, as well as the frequent arrests of Mrs. Roberson's other sons (see N.T.S.H. 570) compels the conclusion that Mrs. Roberson was fully aware of her offspring's constitutional rights. Indeed, defendant's parents had been with defendant during his prior contacts with the legal system (Brief for Appellant at 15).

[14] Defendant stopped attending school in the tenth grade. While Judge Cain's opinion states that defendant's I.Q. was 66 and Judge Prattis' opinion says his I.Q. was 77, the presentence report introduced into evidence at the P.C.H.A. hearing reveals that his I.Q. was 80.

[15] Defendant admitted that he was given his *Miranda* warnings three times on the night of his arrest and even signed a statement that had his rights written on it (N.T.S.H. 390, 427). In fact, defendant in his testimony never claimed that he did not understand his rights; his only complaint was that his confession was beaten out of him, a claim both the suppression court and the trial court found completely incredible.

Brief for Appellee at 15–17.

Appellant further contends that his confession should have been suppressed due to the period of delay between his arrest and his statement and the delay between his arrest and his arraignment. We note first that appellant's trial was held from March 10 to March 16, 1976. *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977) was

decided on March 16, 1977. Therefore, the "six hour" rule adopted in *Davenport* is not applicable to the instant case.[5] Nevertheless, we must still decide whether any delay between appellant's arrest and arraignment was so "unnecessary" under the pre-*Davenport* standards that the evidence obtained during the delay should have been suppressed.

Our concern with unnecessary delay in arraigning criminal defendants after their arrest was first addressed in *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972) and its progeny. *See also*, Pa.R.Crim.P. 122 and 130 (formerly Rule 116 and 118). In these decisions we developed a rule of exclusion that rendered inadmissible incriminating evidence extracted from an accused during periods of unnecessary delay .... The evil which prompted this development was a recognition of the coercive environment that can be established by interminable custodial questioning.

*Commonwealth v. Jenkins*, 500 Pa. 144, 146, 454 A.2d 1004, 1005–1006 (1982). (footnote and citations omitted).

In *Commonwealth v. Williams*, 455 Pa. 569, 319 A.2d 419 (1974), the Pennsylvania Supreme Court established a three-part test for determining whether evidence obtained during a prearraignment delay must be suppressed. The court must find that (1) the delay is unnecessary; (2) the evidence obtained is prejudicial; and (3) the evidence is reasonably related to the delay. *Id.*, 455 Pa. at 572, 319 A.2d at 420.

■ Instantly, the record indicates that appellant was stopped by the police on January 23, 1975 at approximately 7:50 p.m. (N.T. 11–3–75 at 67–70). The officers took appellant to his residence where appellant's mother told the officers that it was alright with her if they took her son to the police station. They arrived at the police station at approximately 8:20 p.m. (N.T. 11–3–75 at 73). The initial

5. *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977) specifically stated that the "six hour" rule is to apply to "all cases in which the accused is arrested after the date of this opinion." *Id.*, 471 Pa. at 288, 370 A.2d at 307.

interrogation took place from 8:25 p.m. to 8:55 p.m. (N.T. 11–3–75 at 74–85). A polygraph test was administered to appellant from 9:25 p.m. to 11:00 p.m. (N.T. 11–5–75 at 166–67). Appellant was left alone from 11:00 p.m. to 12:10 a.m. (N.T. 11–5–75 at 230–34). During an interrogation that took place between 12:10 a.m. and 1:50 a.m., appellant gave an exculpatory statement as to himself but implicated four other individuals in the alleged crime. (N.T. 11–5–75 at 234–51). Between 1:50 a.m. and 2:40 a.m. the appellant was fed, given a drink, used the lavatory facilities, and was permitted to make a phone call. (N.T. 11–5–75 at 253–305). From 2:40 a.m. until 3:30 a.m. appellant was left alone. (N.T. 11–5–75 at 351). At 3:40 a.m., appellant requested another polygraph test in order to prove his innocence. From 3:45 a.m. to 5:00 a.m., appellant was given another polygraph test. (N.T. 11–5–75 at 266). From 5:00 a.m. to 6:20 a.m., appellant gave an inculpatory statement which was typewritten and signed by the appellant. (N.T. 11–5–75 at 267–73).

We don't believe that the delay in the instant case was "unnecessary." Much of the delay (approximately 2 hours and 50 minutes) was due to the two polygraph tests administered to the appellant. In *Commonwealth v. Blagman,* 458 Pa. 431, 326 A.2d 296 (1974), our supreme court held that where the accused offered to take a polygraph test within an hour of his arrest in order to exculpate himself, the limited delay due to the administration of the test could not be said to have constituted an unnecessary delay. Instantly, the facts are similar; the appellant volunteered to take the polygraph tests in order to exculpate himself. Thus, these time periods do not constitute "unnecessary" delay.

We also note that much of the delay was caused by the appellant's initial exculpatory statement that incriminated four other persons. The time period during which the police attempted to verify appellant's statements was not unnecessary delay. *Commonwealth v. Whitson,* 461 Pa. 101, 106, 334 A.2d 653, 654–55 (1975) (three hour delay to

check out accused's story was not unnecessary); *Commonwealth v. Edwards*, 237 Pa.Super. 485, 489, 353 A.2d 462, 463–64 (1975) (false answers encourage delay and police may have a reasonable amount of time to investigate).

Furthermore, appellant at all times indicated that he wished to cooperate. *Commonwealth v. Cherry*, 457 Pa. 201, 205, 321 A.2d 611, 613 (1974) noted that it would be permissible to delay arraignment where the accused demonstrates a desire to cooperate. Also, some of the delays occurred in order to allow appellant to rest between interviews so as to avoid any possibility of coercion. *See Commonwealth v. Young*, 460 Pa. 598, 334 A.2d 252 (1975).

We find that the time period between appellant's arrest and arraignment cannot be construed as unnecessary delay.

■ We admit that the second part of the *Williams* test is probably met, since a confession is almost always prejudicial to the accused. We do not believe, however, that the evidence obtained before appellant's arraignment is reasonably related to the delay. The delay was not a contributing factor in obtaining the confession. *See Commonwealth v. Young, supra.* Judge Cain thoroughly discussed this aspect in his opinion dated April 7, 1976.

In the present case, the [appellant] was given his *MIRANDA* warnings repeatedly. He willingly offered information to the police concerning the crime and voluntarily agreed to questioning. He was subjected to no threats or promises and there is no showing that he was tired or otherwise physically impaired. Lastly, the [appellant] was not subjected to prolonged and constant questioning, rather to the contrary, he was allowed to rest between interviews for almost an hour. Under these facts we are convinced this case does not disclose the existence of coercive circumstances. Therefore, we conclude that no reasonable relationship exists between the delay and the confession.

Lower ct. op., 4–7–76 at 14.

Our review of the record satisfies us that no incriminating evidence was extracted from the accused during peri-

452

ods of unnecessary delay. We are not here confronted with a situation where incriminatory information was obtained through coercive means. We have examined the totality of the circumstances in order to determine the degree of coercion in reaching this conclusion. Our examination of the record convinces us that the delay bore no direct relationship to appellant's statement. The confession was not a product of the delay, that is, the delay was not shown to be a contributing factor in obtaining the confession.

Thus, we find that the lower court did not err in refusing to suppress appellant's confession.

Order affirmed.