413 A.2d 1088

COMMONWEALTH of Pennsylvania

v.

Richard W. STOCKARD, Appellant.

Supreme Court of Pennsylvania.

Argued March 4, 1980.

Decided May 2, 1980.

John J. Vierthaler, Butler, Sanders J. Mestel, Mestel, Cummings & Benson, Canton, Ohio, for appellant.

Robert F. Hawk, Asst. Dist. Atty., Butler, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

212

LARSEN, Justice.

Appellant Richard W. Stockard was convicted in the Butler County Court of Common Pleas of five counts of violating Section 3927[1] of the 1972 Crimes Code ("Theft by failure to make required disposition of funds received") and five counts of violating Section 1–401(b)[2] of the Pennsylvania Securities Act of 1972. ("Fraudulent and Prohibited Practices"—"Sales and Purchases"). Post-verdict motions were denied and appellant was sentenced to ten terms (one for each count) of imprisonment for not less than two and one half years nor more than five years. All of the terms were concurrent except for the first two, which were consecutive. Additionally, appellant was required to pay the costs of prosecution and to make restitution to the victims of his crimes. The Superior Court, 266 Pa.Super. ——, 405 A.2d 574, affirmed appellant's convictions and we granted appellant's petition for allowance of appeal.

Appellant's first contention is that there was insufficient evidence to support his convictions for violating Section 3927 of the 1972 Crimes Code. Section 3927(a) provides:

A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition. The foregoing applies notwithstanding that it may be impossible to identify particular property as belonging to the victim at the time of the failure of the actor to make the required payment or disposition.

■ "To evaluate the sufficiency of the evidence, we must view the evidence in the light most favorable to the Commonwealth as verdict winner, accept as true all the

1. 18 Pa.C.S.A. 3927 (1973).

2. Act of December 5, 1972, P.L. 1280, No. 284, § 401, 70 P.S. 1–401(b) (1979–80 Supp.).

evidence and all reasonable inferences upon which, if believed, the jury could properly have based its verdict, and determine whether such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt. Moreover, it is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The fact finder is free to believe all, part or none of the evidence." *Commonwealth v. Tate*, 485 Pa. 180, 182, 401 A.2d 353, 354 (1979).

■ Viewed under this standard, the record establishes that in or about June 1973, appellant formed a corporation entitled "Erich's Famous Recipe Fried Chicken, Inc." (hereinafter referred to as "the corporation"). At the time of the incorporation, appellant already owned various restaurants. He also personally owed $50,000 to Investor's Security Leasing (ISL).

Between September and November, 1973, appellant sold a total of $24,530 in corporate stock to five investors. As the investors were making these payments, appellant was diverting a total of $20,000 of the corporation's funds to ISL to repay his aforementioned personal loan. Appellant's diversion of corporate funds occurred in the following manner:

1) Between September 6 and 19, 1973, three investors paid a total of $12,500 to the corporation for stock; appellant deposited these funds in the corporate bank account and on September 24, 1973, appellant paid $10,000 of corporate funds to ISL;

2) On October 11, 1973, a fourth investor paid $7,005 to the corporation stock; appellant deposited these funds in the corporate bank account and on October 15, 1973, appellant paid $5,000 of corporate funds to ISL; [3] and

3) On November 9, 1973, a fifth investor paid $5,025 to the corporation for stock; appellant deposited these funds in the corporate bank account and on November 13, 1973, appellant paid $5,000 of corporate funds to ISL.

**3.** The fourth investor also paid another $3,000 to the corporation for stock; rather than depositing these funds in a corporate bank account, appellant deposited said funds in a private (non-corporate) account.

Since the record clearly establishes that appellant, after obtaining a total of $24,530 from five investors for use in the furtherance of corporate purposes, diverted $20,000 of corporate fund to repay his own personal obligations, there is sufficient evidence to support his convictions for violating section 3927.[4]

■ Appellant's second contention is that there was insufficient evidence to support his convictions for violating Section 1–401(b) of the Pennsylvania Securities Act. Section 1–401(b) provides:

It is unlawful for any person, in connection with the offer, sale or purchase of any security in this State, directly or indirectly:

. . . . .

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

At trial, each of the five investors testified that when appellant sold stock to each of them, appellant stated that the funds received from the sale of the stock would be used to expand the corporation, and, specifically, to open a restaurant in Etna, Pennsylvania. The investors testified that appellant did not inform the investors that he personally owed $50,000 to ISL and that a portion of the funds received from the sale of corporate stock would be used to repay his personal loan from ISL. Appellant, in selling the stock to the five investors and in not informing them of his intention to pay a personal creditor with the proceeds from the sales, "omit[ted] to state . . . material fact[s]" which were "necessary" in order to make his statements regarding the corporation "not misleading", and therefore, there is suffi-

4. Appellant testified that the corporation owed him at least $85,000 for equipment and fixtures that he owned but which were being used by the corporation; appellant argues that by diverting $20,000 from the corporation to ISL (to repay his personal obligation to ISL) he was, in effect, being repaid by the corporation for the "funds" which he earlier loaned the corporation. Obviously, the jury did not believe this.

cient evidence to support his convictions for violating Section 1–401(b) of the Pennsylvania Securities Act.

■ Appellant's third contention is that the trial court erred in permitting Commonwealth witness William C. McCotter, a Pennsylvania Securities Commission examiner, "to make [a] finding of fact on the ultimate issue" during his testimony. At trial, McCotter testified as follows:

Q. [PROSECUTOR]: All right. Now, if in fact there was a fifty thousand dollar debt to ISL that was owed by the corporation, would the victims—

[DEFENSE COUNSEL]: I would have to object. He is going to ask him an opinion question.

THE COURT: You're overruled. Proceed.

Q. [PROSECUTOR]: If in fact a fifty thousand dollar loan was owed to ISL Corporation by the Fried Chicken Corporation, would the investors have to ask the defendant to disclose this information?

A. [McCOTTER]: He would have a duty under the act, 1972 Pennsylvania Securities Act, to disclose—

[DEFENSE COUNSEL]: Your Honor—

THE COURT: You put your objection on, I'm overruling it.

[DEFENSE COUNSEL]: He is attempting to interpret the rule of the Commonwealth.

THE COURT: No, he is not interpreting. That's the law.

Q. [PROSECUTOR]: Do you have a copy of that law with you?

A. Yes, sir.

Q. What specific sections are you referring to?

A. It's part 4 of the 1972 Securities Act, Fraudulent and Prohibited Practices, Section 1–401, Sales and Purchases. "It is unlawful for any person, in connection with the offer, sale or purchase of any security in this State, directly or indirectly: (a) To employ any device, scheme or artifice to defraud; (b) To make any untrue statement of a material fact—

[DEFENSE COUNSEL]: I would have to object to him reading of the sections to—

THE COURT: I find it very helpful. You may proceed.

A. —fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading."

Appellant's claim is without merit; witness McCotter expressed no opinion on the ultimate issues in this case but rather recited the applicable sections of the Pennsylvania Securities Act.

■ Appellant's fourth contention is that the trial court erred in denying his motion to dismiss the criminal complaint with respect to the Section 3927 violations, arguing that the statute of limitations had expired prior to the time that the prosecution of the Section 3927 violations had commenced.[5]

The statute of limitations for commencing prosecution of Section 3927 violations is two years. *See* 18 Pa.C.S.A. 108(b)(2) (1973).[6] Additionally, Section 108(f)(1)[7] of the 1972 Crimes Code ("Tolling of statute") provided:

The period of limitation does not run: (1) *during the time when the accused* is continuously absent from this Commonwealth or *has no reasonably ascertainable place of abode or work within this Commonwealth.* 18 Pa.C. S.A. 108(f) (1973) (emphasis provided).

On January 6, 1977, a pre-trial hearing was held to adjudicate appellant's motion to dismiss the complaint. (The sole purpose of this hearing was to adjudicate the statute of limitations issue.) At this hearing, William C. McCotter, a Pennsylvania Securities Commission examiner and an inves-

---

5. Appellant does not contend in this appeal that the statute of limitations had expired prior to the time that the prosecution of the Pennsylvania Securities Act violations [Section 1–401(b)] had commenced.

6. Section 108(b)(2) was repealed effective June 27, 1978. *See,* 42 Pa.C.S.A. 5552 (1979 Pamphlet).

7. Section 108(f)(1) was repealed effective June 27, 1978. *See,* 42 Pa.C.S.A. 5554 (1979 Pamphlet).

tigator in the instant case, testified that after conducting "a very thorough search" for appellant, he (McCotter) concluded that appellant "had no legal residence or office to our knowledge in the state of Pennsylvania" since 1974.[8] Because appellant *no longer had a* "reasonably ascertainable" residence or office in Pennsylvania since (at the latest) the end of 1974, the statute of limitations was tolled (at the latest) at the end of 1974. Since the tolling of the statute of limitations occurred *less* than two years after appellant's Section 3927 violations took place, the statute of limitations was not violated and therefore, the trial court did not err in denying appellant's motion to dismiss the complaint.

■ Appellant's last contention is that the Commonwealth erred in failing to allege in the indictment that it would seek to toll the statute of limitations under Section 108(f)(1). To support this proposition, appellant cites *Commonwealth v. Bender*, 251 Pa.Super. 454, 459, 380 A.2d 868, 870 (1977) (allocatur refused) wherein the Superior Court held that "[w]here the Commonwealth seeks to toll the statute of limitations by establishing one of the enumerated exceptions, it must allege the exception in the indictment. The purpose of this rule is 'to apprise the defendant that he must defend not only against the crime itself but also against the limitation of prosecution.'" (citations omitted).

■ The fact that the Commonwealth did not allege in the indictment that it would seek to toll the statute of limitations is of *no consequence* because there was no prejudice to the appellant. The Commonwealth *did* inform appellant of the tolling of the statute of limitations when the Commonwealth filed its answer to appellant's motion to dismiss the complaint. Approximately six weeks after the Commonwealth filed the aforementioned answer to appellant's motion to dismiss, appellant had an opportunity to *fully* contest the Commonwealth's allegation (that the statute of limitations had tolled) at the January 6, 1977 pre-trial hearing

8. McCotter's testimony at the January 6, 1977 pre-trial hearing was corroborated by appellant's testimony at trial. At trial, appellant testified (on January 13, 1977) that for the previous "two and a half years" (July, 1974 to January, 1977), he was a resident of Ohio.

(which was scheduled specifically to adjudicate appellant's motion to dismiss). As long as a defendant, some reasonable time before trial, is appraised that the Commonwealth will seek to toll the statute of limitations, the due process requirements of notice are satisfied.[9]

Judgments of sentence affirmed.

FLAHERTY, J., filed a concurring opinion in which EAGEN, C. J., joined.

ROBERTS and NIX, JJ., concur in the result.

FLAHERTY, Justice, concurring.

I join in the majority opinion, in all but one respect, but the result remains unchanged. In my view, the trial judge was in error in not sustaining the objection to testimony by the Pennsylvania Securities Commission examiner regarding the law applicable in this case. Although this testimony was clearly inadmissible, the error which permitted its introduction, according to this record, is harmless and does not affect the result reached by the majority.

EAGEN, C. J., joins in this concurring opinion.

---

9. Appellant also contends that "the trial court's instructions were so prejudicial to . . . [him] that they effectively deprived him of his right to a fair trial by a jury." This issue was not raised at trial nor in post-verdict motions and therefore, is waived.