J-A04034-18

2018 PA Super 184

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GRAHAM B. SPANIER | |
| Appellant | No. 1093 MDA 2017 |

Appeal from the Judgment of Sentence Entered June 2, 2017
In the Court of Common Pleas of Dauphin County
Criminal Division at No: CP-22-CR-0003615-2013

BEFORE: STABILE, NICHOLS, and RANSOM,[*] JJ.

OPINION BY STABILE, J.: **FILED JUNE 26, 2018**

Appellant, Graham B. Spanier, appeals from the judgment of sentence of four to twelve months of incarceration, imposed June 2, 2017, following a jury trial resulting in his conviction for one count of endangering the welfare of a child ("EWOC").[1] We affirm.

Appellant is the former President of the Pennsylvania State University ("PSU"), and served in that capacity from 1995 through 2011.[2] The charges against him arise from his response to allegations of sexual misconduct

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 4304(a)(1).

[2] We have relied on the trial court's opinion for our recitation of facts. **See** Trial Court Opinion (TCO), 9/22/17, at 1-9.

against Gerald "Jerry" A. Sandusky, who was the defensive coordinator for the Penn State football team and founder of a non-profit charity for troubled youth, The Second Mile ("TSM").

In May 1998, the mother of an eleven-year-old boy who was a participant in Sandusky's charity program contacted PSU Police. She informed a detective that Sandusky had bear-hugged her son while both were naked in the shower. An investigation commenced, and various PSU officials were informed, including Tom Harmon, PSU's Chief of Police, Gary Schultz, PSU's Vice President for Finance and Business, and Tim Curley, PSU's Athletic Director. Schultz and Curley corresponded regularly by email regarding the investigation. Appellant was a carbon-copy recipient of some of those emails. Ultimately, no criminal charges were filed, and the investigation closed in June 1998. The university took no further action regarding Sandusky at that time.

On the evening of February 9, 2001, Michael McQueary, a graduate assistant with the PSU football team, went into the Lasch Building. He heard noises and, upon investigating, observed Sandusky sexually assaulting a ten- to twelve-year-old boy in the shower. McQueary left the building but informed his father about the incident later that night. On February 10, 2001, McQueary told head football coach Joe Paterno about what he had seen. On February 11, 2001, Paterno contacted Curley, who in turn informed Schultz.

On February 12, 2001, following a routine president's council meeting, Curley and Schultz met privately with Appellant to discuss Sandusky. They

discussed the recent incident and the 1998 incident, which Appellant remembered. They devised a three-part plan: 1) speaking with Sandusky about appropriate use of facilities; 2) contacting the director of TSM; and 3) contacting the Department of Public Welfare ("DPW"). Appellant put Curley in charge of executing the plan and keeping Schultz informed.

On February 17, 2001, Curley informed Schultz that he had not begun to implement the plan. The next week, Curley and Shultz met with McQueary. He did not describe the incident in detail, but stated that Sandusky's conduct was sexual and "over the line." On February 25, 2001, Curley and Schultz informed Appellant of McQueary's account. The next day, Schultz sent Curley an email requesting he execute the three-step plan.

On February 27, 2001, Curley emailed Schultz and Appellant to say that he was no longer comfortable with the original plan. Instead, Curley wanted to speak only with Sandusky at first to advise him to seek professional help, and to tell him he could no longer bring underage boys to PSU facilities. If Sandusky cooperated, Schultz, Curley, and Appellant would inform only TSM; otherwise, they would inform both TSM and DPW. Appellant supported Curley's plan, though he observed that if Sandusky did not cooperate, they would be vulnerable for not having reported the incident.

Sandusky denied any wrongdoing when Curley spoke to him. Nevertheless, Curley told him that he could no longer bring children into PSU athletic facilities and that the director of TSM, Jack Raykovitz, would be

informed. Curley spoke to Raykovitz and expected Raykovitz to enforce the limits on Sandusky's use of PSU facilities, but Curley did not offer Raykovitz any direction on how to proceed. After speaking with Sandusky and Raykovitz, Curley informed Appellant and Schultz that he had done so. Curley never contacted DPW, Children and Youth Services, or the police. Further, Curley did not inform campus police that Sandusky was not permitted to bring children into the facilities, or inform any other PSU personnel that they should enforce this rule. McQueary continued to observe Sandusky in the Lasch Building after hours.

Sandusky subsequently abused at least four more young boys, including one in the Lasch Building shower in the summer of 2002.[3] In 2011, Sandusky was arrested and charged with forty-nine counts arising from his alleged abuse of ten child victims. A jury found Sandusky guilty on multiple counts. Appellant was removed as PSU president while the charges against Sandusky were pending.

On November 1, 2012, Appellant was charged with one count of perjury, two counts of endangering the welfare of children ("EWOC"), one count of obstruction of justice, three counts of conspiracy, and one count of failure to

---

[3] The victim, John Doe, testified at Appellant's trial that in the summer of 2002, when he was approximately twelve or thirteen years old, Sandusky sexually assaulted him in the shower at the Lasch Building. **See** Notes of Testimony (N.T.), 3/22/17, at 404-08.

report suspected child abuse.[4] Appellant filed pre-trial motions seeking to preclude the introduction of the testimony of Cynthia Baldwin[5] and quash charges against him based upon violation of attorney-client privilege. The trial court denied those motions, and Appellant timely filed an interlocutory appeal. A prior panel of this Court determined that Ms. Baldwin had breached attorney-client privilege and, therefore, was incompetent to testify as to her confidential communications with Appellant. *See Commonwealth v. Spanier*, 132 A.3d 481, 482 (Pa. Super. 2016). Accordingly, this court quashed the charges of perjury, obstruction of justice, and conspiracy to commit perjury.[6] *Id.*

Following remand, Appellant filed an omnibus pre-trial motion and a *habeas corpus* petition requesting dismissal of the failure to report and child endangerment charges, asserting that they were time-barred. The Commonwealth responded that the charges were not time-barred because Appellant had engaged in a course of conduct and the statute of limitations did not commence until the course of conduct was complete. The trial court

---

[4] 18 Pa.C.S.A. §§ 4902, 4304, 5101, 903, and 23 Pa.C.S.A. § 6319, respectively.

[5] Ms. Baldwin was the general counsel of PSU, and a former Justice of the Pennsylvania Supreme Court.

[6] A count of conspiracy to endanger the welfare of children remained.

dismissed the failure to report charge as time-barred but denied Appellant's request to dismiss the EWOC charges.

The case proceeded to jury trial in March 2017.[7] The jury found Appellant guilty of EWOC, 18 Pa.C.S.A. § 4304(a)(1), not guilty of EWOC, 18 Pa.C.S.A. § 4304(a)(2)[8], and not guilty of conspiracy to endanger the welfare of children. Additionally, the jury found Appellant had not engaged in a course of conduct with respect to the EWOC conviction, resulting in a conviction for a misdemeanor rather than a felony. 18 Pa.C.S.A. § 4304(b)(1)(ii).

On June 2, 2017, the court sentenced Appellant to four to twelve months of incarceration followed by two years of probation. This timely appeal followed. Appellant raises the following questions for our review:

> 1. The Commonwealth bears the burden of proving that this prosecution, which was commenced on November 1, 2012, was brought within the two-year statute of limitations for endangering the welfare of children. The only argument the Commonwealth made before or at trial that the charge was not time barred was that [Appellant] endangered the welfare of children through a course of conduct. Where the only evidence presented at trial regarding this charge involved conduct in February 2001, and the jury specifically found that [Appellant] did *not* engage in a course of conduct, did the trial court err in not entering judgment of acquittal?
>
> 2. The Commonwealth was required to prove beyond a reasonable doubt that [Appellant] was supervising the welfare of a minor child

---

[7] Prior to Appellant's trial, Schultz and Curley each pleaded guilty to a single misdemeanor child endangerment charge.

[8] Respectively, Appellant was found guilty of violating a duty of care and not guilty of preventing, in an official capacity, the making of a report of suspected child abuse. *See* 18 Pa.C.S.A. §§ 4304(a)(1), (2).

to whom [Appellant] owed a duty of care, protection, or support. The duty of care, protection, or support must exist in law. A person supervising the welfare of a child is someone who provides permanent or temporary care, supervision, or control of a child in lieu of parental care, supervision, and control. Where the Commonwealth presented no evidence of a statutory, contractual, or common-law duty of care that [Appellant] owed any minor child or that he had any direct interaction with minor children or was the point person for abuse allegations or supervised the individual who abused minor children on campus, did the trial court err in not entering a judgment of acquittal?

3. The state and federal constitutions prohibit the government from imposing punishment for conduct that was not criminal at the time of the conduct but was later criminalized. In 2001, when the alleged conduct at issue here occurred, the child-endangerment statute did not encompass someone who was employing or supervising someone else who was supervising the welfare of a minor child; this "employing or supervising" provision was added to the statute in 2007. To the extent [Appellant]'s child-endangerment conviction was based on his alleged employment or supervision of someone else who was supervising the welfare of a child, did the trial court err in not entering a judgment of acquittal?

4. A jury in a criminal case must be given a fair, accurate, and complete statement of the law. A new trial should be ordered where there is an omission from the charge amounting to a fundamental error.

> a. Where [Appellant] argued before trial that the child-endangerment charge was time-barred and requested that the jury be instructed on this issue, did the trial court err in denying this request and denying [Appellant's] motion for a new trial due to that error?
>
> b. Where the only conduct at issue here occurred in 2001, did the trial court err in denying [Appellant's] request to instruct the jury on the 2001 version of the child-endangerment statute rather than the 2007 version and denying his motion for a new trial due to that error?
>
> c. Where the standard jury instructions for child endangerment do not reflect a complete statement of

- 7 -

> the law, as interpreted by this Court and the Supreme Court, did the trial court err in using that instruction and in denying [Appellant's] requested instruction on child endangerment and denying his motion for a new trial due to that error?

Appellant's Brief at 4-6 (answers omitted).

We first consider Appellant's argument that the EWOC prosecution is barred by the statute of limitations. This raises a question of law, for which our standard of review is *de novo* and our scope of review is plenary. ***Commonwealth v. Vega-Reyes***, 131 A.3d 61, 63 (Pa. Super. 2016) (*en banc*). The trial court reasoned that the statute of limitations was timely pursuant to 42 Pa.C.S.A. § 5552(c)(3). **See** Trial Court Opinion, 9/22/17, at 9-10.[9] Section 5552 creates exceptions to the two-year statute otherwise made generally applicable under 5552(a):

> **(a) General rule.--**Except as otherwise provided in this subchapter, a prosecution for an offense must be commenced within two years after it is committed.
>
> [...]

---

[9] The Dissent states that the trial court reasoned the statute of limitations was "tolled" by the exception at § 5552(c)(3). Dissenting Opinion, at 1. We find this to be in error, as the trial court never mentioned or relied upon any tolling provision to conclude the prosecution for misdemeanor EWOC commenced within the statutorily prescribed limitations period under § 5552(c)(3). As we explain *infra*, this distinction is important. A statute of limitations may be "tolled" (or stopped from running) under 42 Pa.C.S.A. § 5554 when the Commonwealth can prove additional facts that qualify to toll a limitations period. Due Process requires that a defendant be apprised prior to trial of facts the Commonwealth intends to establish to toll a limitations period. No such notice was required here where the complaint put Appellant on notice of all facts that support the application of § 5552(c)(3).

**(c) Exceptions.--**If the period prescribed in subsection (a), (b) or (b.1) has expired, a prosecution may nevertheless be commenced for:

[…]

(3) Any sexual offense committed against a minor who is less than 18 years of age any time up to the later of the period of limitation provided by law after the minor has reached 18 years of age or the date the minor reaches 50 years of age. As used in this paragraph, the term "sexual offense" means a crime under the following provisions of Title 18 (relating to crimes and offenses):

[…]

Section 4304 (relating to endangering welfare of children).

[…]

42 Pa.C.S.A. § 5552(a), (c).

At trial the Commonwealth sought a felony conviction for EWOC under § 4304(b)(1)(ii), which requires proof that the perpetrator engaged in a course of conduct.[10]  Had the Commonwealth succeeded, the statute of

---

[10]  The Pennsylvania Crimes Code defines EWOC in relevant part as follows:

**(a) Offense defined.--**

(1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

[…]

**(b) Grading**.--

limitations presumably would have commenced when the course of conduct ended. **See** 42 Pa.C.S.A. § 5552(d). The jury, however, found no course of conduct and therefore found Appellant guilty of the lesser-included misdemeanor offense under 18 Pa.C.S.A. § 4304(b)(1)(i). Well-settled law permits this.

> Established Pennsylvania law states a defendant can be convicted of a crime that was not actually charged when the uncharged offense is a lesser-included offense of the charged crime. As long as the conviction is for a lesser-included offense, the defendant will have been put on notice of the charges against him and can adequately prepare a defense.

**Commonwealth v. Houck**, 102 A.3d 443, 449–50 (Pa. Super. 2014) (citing **Commonwealth v. Sims**, 919 A.2d 931 (Pa. 2007)).

Pursuant to **Houck**, Appellant was on notice that he was liable to be convicted of misdemeanor EWOC. Attendant to that, Appellant was on notice of the applicability of § 5552(c)(3), which expressly applies to offenses under § 4304. The Commonwealth filed its complaint against Appellant on November 1, 2012, more than eleven years after the February 9, 2001 offense

---

> (1) Except as provided under paragraph (2), the following apply:
>
> > (i) An offense under this section constitutes a misdemeanor of the first degree.
> >
> > (ii) If the actor engaged in a course of conduct of endangering the welfare of a child, the offense constitutes a felony of the third degree.

18 Pa.C.S.A. § 4304.

- 10 -

and well outside of the general two-year limitations period of § 5552(a). Thus, it was plainly evident when the Commonwealth filed its complaint that § 5552(c)(3) would govern the limitations period for a misdemeanor EWOC prosecution.

We are cognizant that § 5552 was amended since the 2001 offense. On February 9, 2001, § 5552(c)(3) provided that, for a sexual offense committed against a minor less than 18 years of age, prosecution could be commenced within two years after the victim's 18th birthday. 1990 Pa. Laws 1341, No. 208, § 1. The 2001 version of § 5552(c)(3) identified § 4304 as a sexual offense (as we will discuss below, it still does). *Id.*; 42 Pa.C.S.A. § 5552(c)(3). Pursuant to the version of § 5552(c)(3) extant at the time of the 2001 offense, therefore, the Commonwealth had until two years after the victim's 18th birthday to commence this prosecution against Appellant.

The grand jury presentment, attached to the criminal complaint as "Exhibit A," stated that the victim of the 2001 offense was a prepubescent boy. Criminal Complaint, 11/1/12, Exhibit A at 15.[11] At trial, the Commonwealth presented unchallenged evidence that the victim was 10 to 12 years old at the time of his February 9, 2001 sexual assault. Therefore, on

_____

[11] *See, e.g. Commonwealth v. Morrow*, 682 A.2d 347, 349 (Pa. Super. 1996) (noting that where the Commonwealth's complaint averred the victim's age but did not reference the statute of limitations, the defendant was sufficiently on notice of the applicable statute of limitations), *appeal denied*, 693 A.2d 587 (Pa. 1997).

January 29, 2007, when the current version of § 5552(c)(3) took effect, the victim was no more than 18 years old. Because the existing statute had yet to expire at the time of its amendment, the amended statute applies to this prosecution. **Commonwealth v. Harvey**, 542 A.2d 1027, 1030-31 (Pa. Super. 1988) (*en banc*). Section 5552(c)(3), as amended in 2007, permitted the Commonwealth to commence this prosecution any time prior to the victim's 50th birthday. 42 Pa.C.S.A. § 5552(c)(3). The victim would have been in his early twenties on November 1, 2012, when the Commonwealth commenced this prosecution. In summary, Appellant's notice of the applicable limitations period was "sufficiently specific so as to allow [Appellant] to prepare any available defenses." **Sims**, 919 A.2d at 939. This prosecution was timely.

Appellant offers several bases for avoiding this result, none of which we find availing. Appellant asserts the prosecution was untimely, since the only argument the Commonwealth ever made to surmount the limitations bar was that Appellant engaged in a course of conduct continuing until after November 2010. The jury expressly rejected that theory, thus defeating the Commonwealth's sole statute of limitations argument. While it is true the jury's rejection of a course of conduct defeated the Commonwealth's attempt to secure a conviction for EWOC as a felony, Appellant's argument that the rejection of a course of conduct finding rendered this prosecution untimely is misplaced. The argument ignores, as previously stated, that Appellant was

convicted of EWOC as a misdemeanor not dependent upon a course of conduct finding.

Likewise, we cannot conclude, as Appellant urges, that the Commonwealth waived its ability to rely upon § 5552(c)(3) because it sought a conviction based upon a course of conduct. As explained, Appellant was always on notice of his potential liability for misdemeanor EWOC. **Houck**, **supra**.

Appellant argues further that the Commonwealth cannot avoid the limitations bar through the trial court's after-the-fact reliance on § 5552(c)(3), which the Commonwealth never raised nor addressed at trial. Appellant points out that nowhere in its criminal complaint, presentment, information, pre-trial motion briefing, proposed jury instructions, or arguments at trial did the Commonwealth invoke the statute of limitations exception at § 5552(c)(3). Appellant argues that the Commonwealth was required to provide notice of its intent to **"toll"** the statute of limitations under § 5552(c)(3) and is prohibited from doing so for the first time post-verdict, let alone on appeal. In support of this proposition Appellant cites **Commonwealth v. Bethlehem**, 570 A.2d 563 (Pa. Super. 1989), **abrogated in part**, **Commonwealth v. Gerster**, 656 A.2d 108 (Pa. 1995), which he maintains is directly on point. We disagree.

In **Bethlehem**, the defendant was convicted of various sexual crimes committed against his young niece during family visits to the victim's former residence where she lived with her parents on or before May 17, 1982. The

complaint against the defendant was filed June 3, 1987, after the longest

applicable statute of limitations already had expired.  In response to defense

motions arguing that the charges were barred by the applicable statute of

limitations, the Commonwealth made no attempt to argue that any applicable

statute of limitations was tolled under § 5554(3)[12].  Rather, the

Commonwealth incorrectly maintained only that time elements were not

controlling in cases involving minors.  In response to post- verdict claims, the

Commonwealth attempted for the first time to argue that the statute of

limitations was tolled by the parent or guardian exception under § 5554(3).

This Court held that the Commonwealth's post-verdict claim that proof of the

---

[12] Section 5554, titled "Tolling of statute," provides:

> Except as provided by section 5553(e) (relating to disposition of proceedings within two years), the period of limitation does not run during any time when:
>
> (1) the accused is continuously absent from this Commonwealth or has no reasonably ascertainable place of abode or work within this Commonwealth;
>
> (2) a prosecution against the accused for the same conduct is pending in this Commonwealth; or
>
> (3) a child is under 18 years of age, where the crime involves injuries to the person of the child caused by the wrongful act, or neglect, or unlawful violence, or negligence of the child's parents or by a person responsible for the child's welfare, or any individual residing in the same home as the child, or a paramour of the child's parent.

42 Pa.C.S.A. § 5554.

applicable exception came too late. At no time pre-trial was the defendant given notice, actual or constructive, of the Commonwealth's intent to claim tolling of the statute of limitations under § 5554(3). The rationale for this conclusion is grounded in due process. When the Commonwealth seeks to toll the statute of limitations by establishing one of the tolling exceptions, it must allege the exception in the indictment. ***Commonwealth v. Stockard***, 413 A.2d 1088 (Pa. 1980).[13] The purpose of this rule is to apprise a defendant that he must defend not only against the crime itself, but also against the limitation of prosecution. ***Id.*** A defendant must have some reasonable time before trial to be apprised of the fact(s) the Commonwealth will seek to prove to toll the statute of limitations in order to satisfy the due process requirements of notice. ***Id.*** The Commonwealth's failure in ***Bethlehem*** to apprise the defendant of facts it intended to prove to toll the applicable statute violated due process. Unlike ***Bethlehem***, the Commonwealth here did not attempt to invoke any of the exceptions under § 5554 to toll the statute of limitations. More importantly, the prosecution for misdemeanor EWOC was not dependent upon proof of any facts outside those already alleged in the complaint. Thus, unlike ***Bethlehem***, notice requirements under due process were not violated here.

---

[13] ***Stockard*** was decided under 18 Pa.C.S.A. § 108(f), the statutory predecessor to current 42 Pa.C.S.A. § 5554.

Likewise, we find **Commonwealth v. Goldhammer**, 489 A.2d 1307, 1312 (Pa. 1985), also cited by Appellant not persuasive. In **Goldhammer**, the Pennsylvania Supreme Court held that the Commonwealth could not rely on § 5552(c)(1) to salvage the timeliness of a prosecution. That section applies to offenses for which fraud or breach of fiduciary duty is a material element, and it permits commencement of prosecution within one year of **discovery** of the fraud or breach. 42 Pa.C.S.A. § 5552(c)(1). While acknowledging that when the Commonwealth seeks to toll the statute of limitations it must allege the exception in the information or otherwise apprise the defendant within a reasonable time that it intends to toll the statute, the Court concluded the discovery provision under § 5552(c)(1) did not apply because neither fraud nor breach of fiduciary duty was a material element of theft by unlawful taking. **Id.** at 1312-13.

**Bethlehem** and **Stockard** are easily distinguishable from Appellant's case in that they construe the statutory tolling provision, currently codified at 42 Pa.C.S.A. § 5554. Section 5554 does not set the applicable limitations period for any offense, and that section is not at issue in this case. Likewise, under § 5552(c)(1), at issue in **Goldhammer**, the Commonwealth must give notice of its intent to prove that the prosecution commenced within one year of the discovery of fraud or breach of fiduciary duty. 42 Pa.C.S.A. § 5552(c)(1). In other words, the Commonwealth must give notice of its intent to establish that the applicable limitations period did not commence

until its discovery of a pertinent fact. In this respect, § 5552(c)(1) is similar to § 5554 because the Commonwealth has to allege and provide a defendant notice of facts regarding its discovery of the offense. Instantly, no additional facts beyond those in the complaint were necessary to place the defendant on notice of that which he would be required to defend against at trial.

Simply put, this case does not involve "tolling" wherein the Commonwealth would have had an obligation to apprise the Appellant of additional facts to defend against in response to his statute of limitations defense. The Commonwealth alleged no facts that forestalled the commencement of the limitations period or interrupted its running. Per **Sims** and **Houck**, Appellant was on notice of his potential criminal liability for misdemeanor EWOC. No limitations period other than § 5552(c)(3) applied to that offense in this case. The complaint and the attached grand jury presentment apprised Appellant of the facts relevant to the applicable limitations period in order to defend against the lesser-included offense of EWOC as a misdemeanor. **Bethlehem**, **Stockard**, and **Goldhammer** are inapposite, as they, unlike the instant case, required that the defendant be given notice of additional facts the Commonwealth intended to prove in order to comply with due process. Appellant has failed to establish that the Commonwealth violated due process by failing to notify him that § 5552(c)(3) set the limitations period for the misdemeanor EWOC prosecution. Both the

misdemeanor offense of EWOC and its applicable statute of limitations were known to the Appellant prior to trial.

Appellant also seeks to avoid the application of § 5552(c)(3) by arguing that he did not personally commit a sexual offense. This argument fails because § 5552(c)(3) expressly and unambiguously identifies § 4304 as one of the sexual offenses to which § 5552(c)(3) applies. 42 Pa.C.S.A. § 5552(c)(3) ("As used in this paragraph, the term 'sexual offense' means a crime under the following provisions of Title 18 (related to crimes and offenses): […] Section 4304 (relating to endangering welfare of children))." Furthermore, § 4304, by its clear terms, does not require sexual misconduct on the part of the perpetrator.[14] Because § 5502(c)(3) clearly lists EWOC as a sexual offense, and because EWOC does not require the perpetrator to be the person committing sexual abuse, Appellant's argument fails. Appellant would have us find statutory ambiguity where none exists, a course of action not permissible under the rules of statutory construction. 1 Pa.C.S.A. § 1921(b) ("When the words of the statute are free and clear from all ambiguity, the letter of it is not to be disregarded under the pretext of

---

[14] There is no dispute that the victim suffered sexual abuse. We therefore need not consider the applicability of § 5552(c)(3) to an EWOC prosecution in which the victim is not alleged to have been the victim of a sex crime.

pursuing its spirit."). For all of the foregoing reasons, we reject Appellant's argument that the prosecution was untimely.

Next, Appellant argues that the evidence for his conviction under § 4304 is insufficient because he owed no duty of care to the victim of the February 9, 2001 assault.[15]

_____

[15] The following governs our review of this issue:

> A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Fitzpatrick*, 159 A.3d 562, 567, (Pa. Super. 2017) (quoting *Commonwealth v Hutchinson*, 947 A.2d 800, 805-06, (Pa. Super. 2008)), *appeal denied*, 173 A.3d 255 (Pa. 2017).

Our Supreme Court has addressed proper construction of the EWOC statute:

> Generally speaking, under the rule of lenity, penal statutes are to be strictly construed, with ambiguities resolved in favor of the accused. In the peculiar context of EWOC, however, we have held that the statute is protective in nature, and must be construed to effectuate its broad purpose of sheltering children from harm. Specifically, the purpose of such juvenile statutes is defensive; they are written expansively by the legislature to cover a broad range of conduct in order to safeguard the welfare and security of our children. In the context of protective juvenile legislation, therefore, we have sanctioned statutes that, rather than itemizing every undesirable type of conduct, criminalize instead the conduct producing or tending to produce a [c]ertain defined result[.] We have accordingly observed:

> The common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it.

*Commonwealth v. Lynn*, 114 A.3d 796, 818 (Pa. 2015) (internal citations and quotation marks omitted). Further, when "legal issues are premised on the sufficiency of the evidence, the record is read in the light most favorable to the Commonwealth as verdict winner, with the benefit of all reasonable inferences therefrom." *Id.* at 818.

"The objective [of § 4304] is to confine criminal punishment for endangering the welfare of children to consequential acts violative of some settled obligation springing from the supervisory relationship of actor to child." *Commonwealth v. Taylor*, 471 A.2d 1228, 1230 (Pa. Super. 1984) (quoting Model Penal Code § 230.4 comment (Official Draft and Revised Comments

- 20 -

1980)). "'Duty of care, protection, and support' are not esoteric; rather, […] they are easily understood and given context by the community at large." *Lynn*, 114 A.3d at 818 (quoting *Commonwealth v. Mack*, 359 a2d 770, 772 (Pa. 1976)).

In *Lynn*, the defendant was a "high-ranking official in the Archdiocese of Philadelphia" who was "specifically responsible for protecting children from sexually abusive priests." *Id.* at 798. Our Supreme Court concluded that sufficient evidence supported Lynn's conviction even though he did not directly supervise any children. The conviction stood because "that which is supervised is the child's welfare." *Id.* The Court found the statute to be "plain and unambiguous on that point." *Id.* at 823. "By requiring supervision of the child's welfare rather than of the child, the statute endeavors to safe-guard the emotional, psychological, and physical well-being of children." *Id.* "[S]upervision is routinely accomplished through subordinates, and is no less supervisory if it does not involve personal encounters with the children." *Id.* at 824.

> Like [defendant], school principals and managers of day care centers supervise the welfare of the children under their care through their management of others. Depending upon the facts, they could be criminally liable for endangering the welfare of children under their supervision if they knowingly place sexually abusive employees in such proximity to them as to allow for the abuse of these youth.

*Id.*

Lynn permitted a priest to live in the rectory of St. Jerome's Church, which had an attached grade school, despite allegations of the priest's sexual abuse of children, despite the priest's acknowledgement that the alleged abuse "must have" happened, and despite recommendations from the staff of a mental health hospital that the priest be kept away from minors. *Id.* at 799-805. Subsequently, the priest sexually abused an altar boy at St. Jerome.

Lynn's conduct predated the 2007 amendment of the EWOC statute. As applicable to Lynn, § 4304 read, "A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." *Id.* at 807. An investigating grand jury therefore did not recommend criminal charges, concluding that the statute was written too narrowly to sustain criminal charges against high-level Archdiocesan officials. In response, the General Assembly amended § 4304 in 2007 to add the bolded clause: "A parent, guardian, or other person supervising the welfare of a child under 18 years of age, **or a person who employs or supervises such a person**, commits an offense if he knowingly endangers the welfare of a child by violating a duty of care, protection or support. 18 Pa.C.S.A. § 4304(a)(1) (emphasis added).

Despite the grand jury's recommendations, the Philadelphia District Attorney's office commenced prosecution against Lynn. The Commonwealth argued to the Supreme Court that the language of the pre-2007 EWOC statute

plainly encompassed persons supervising others who had contact with minors.

*Id.* at 816. The Supreme Court agreed, holding that "[b]y its plain terms, the [pre-2007 statute] encompasses all forms of supervision of a child's welfare." *Id.* at 824. The Court continued:

> Further, as the Commonwealth correctly argues, supervision is routinely accomplished through subordinates, and is no less supervisory if it does not involve personal encounters with the children. Like [the defendant], school principals and managers of day care centers supervise the welfare of the children under their care through their management of others. Depending upon the facts, they could be criminally liable for endangering the welfare of the children under their supervision if they knowingly place sexually abusive employees in such proximity to them as to allow for the abuse of these youth.

*Id.*

Appellant argues, based on a litany of factual distinctions between this case and *Lynn*, that he owed no duty of care.[16] Appellant notes, correctly, that Lynn was specifically responsible for protecting children from sexual abuse and investigating allegations of sexual abuse by clergy. *Id.* at 798-99. Appellant notes, again correctly, that the instant record contains no evidence from which we could conclude that Appellant owed a general duty of care to all minors on Penn State's campus at any time for any reason. Appellant's Brief at 45.

---

[16] Though the *Lynn* Court did not address duty of care, instead analyzing whether the defendant actually supervised the welfare of minors (*see Lynn*, 114 A.3d at 823), both parties treat *Lynn* as instructive on the question of duty.

However, our focus is limited to a university president's duty in the face of knowledge of allegations of on-campus sexual abuse of minors, in this case by a high-status former employee with access to campus facilities. Here, as in *Lynn*, Appellant was aware of specific allegations of sexual abuse. Here, as in *Lynn*, Appellant occupied a position of high authority with respect to the site of the alleged abuse. Here, as in *Lynn*, Appellant oversaw his institution's response. In his own words in an email, Appellant noted to Curly and Schultz that the three could become vulnerable for not reporting Sandusky to authorities if his behavior continued.[17] Appellant, like the defendant in *Lynn*, had sufficient information and authority to take action. Indeed, he was uniquely positioned to do so.

Appellant relies heavily on the fact that the *Lynn* defendant was specifically responsible for handling sex abuse allegations against clergy. In fairness to Appellant, the *Lynn* Court also emphasized that fact, citing it in its opening paragraph. Instantly, we do not have direct evidence that Appellant was specifically responsible for handling allegations of on-campus sex abuse of minors. The record does establish, however, that Appellant was university president, that people working under him apprised him of the alleged abuses

---

[17] To prove the defendant's intent, the Commonwealth must establish: (1) that the accused was aware of his or her duty of care; (2) that the accused was aware the child was in threatening circumstances; and (3) that the accused failed to act or took action "so lame or meager that such actions cannot reasonably be expected to protect the child's welfare." *Commonwealth v. Bryant*, 57 A.3d 191, 197 (Pa. Super. 2012).

in 1998 and 2001, and that, in 2001, he oversaw and approved the university's woefully deficient response. Thus, the lack of evidence that Appellant was the "point man" in the case of alleged on-campus abuse of minors, or that he was "specifically responsible" for addressing all such cases does not undermine or preclude a conclusion that he was supervising the welfare of a child. The facts remain that Appellant was the school's highest authority and that he personally oversaw PSU's response to the 2001 allegations.

Appellant also distinguishes *Lynn* on ground that he did not supervise persons who interacted directly with the minor in question, as did the *Lynn* defendant or as would a school principal or daycare manager. Again, we find the distinction unpersuasive. The *Lynn* Court held that it is the **child's welfare** that is supervised under § 4304. The facts before us establish that Appellant, a university president, supervised his school's response to repeated allegations of on-campus abuse of a minor by a high-status former employee with access to campus facilities. He was clearly supervising a child's welfare pursuant to *Lynn*.

The *Lynn* Court, however, did not address the duty of care question. The extent to which "supervision of a child's welfare" and "duty of care" overlap has, as the *Lynn* Court noted, been the subject of varied interpretation by this Court. In *Bryant*, we noted that "[o]n multiple occasions, we have extended a duty of care to non-relatives who exercise some supervisory role over children." *Bryant*, 57 A.3d at 197. Thus, *Bryant*

can be read to hold that a duty of care follows the supervisory role. In **Brown**, however, we explained that supervision of welfare and duty of care are distinct elements, one governing the class of persons subject to the law and the other governing the proscribed conduct. **Brown**, 721 A.2d at 1107-08.

This case, in the words of **Bryant**, presents a non-relative in a supervisory role, and thus precedent exists for extending a duty of care in this case. From there, we consider our Supreme Court's repeated directive that we must construe § 4304 to "effectuate its broad purpose of sheltering children from harm" and keep in mind the "common sense of the community" in determining which conduct is criminal under § 4304. **Lynn**, 114 A.3d at 818. To hold that Appellant was not supervising a child's welfare when he oversaw PSU's response to the Sandusky allegations, or to hold that he owed no duty of care in his exercise of that supervisory authority, would plainly not effectuate the purpose of sheltering children from harm. Similarly, we cannot believe that the common sense of the community would find that Appellant owed no duty of care in discharging his supervisory role. **See Lynn**, 114 A.3d at 818 ("'Duty of care, protection, and support' are not esoteric; rather, […] they are easily understood and given context by the community at large.") On the facts before us therefore, we conclude that Appellant was supervising the welfare of a child and owed a duty of care to the child. We need not decide whether and to what extent the supervisory role and the duty of care overlap in all cases.

Next, we consider Appellant's argument that the version of § 4304 extant in 2001 did not apply to him because he did not supervise children directly. The *Lynn* Court wrote: "A subsequent change in language does not retroactively alter the legislative intent that is apparent in the plain language of the prior version of the statute." *Id.* at 827. Thus, the *Lynn* Court upheld the defendant's conviction under the pre-2007 version of EWOC even though the pre-2007 did not expressly apply to a person "who employs or supervises" someone supervising the welfare of a child. Appellant would distinguish *Lynn* because the defendant there was supervising priests who directly interacted with children. Here, in contrast, there is no evidence that Appellant supervised anyone who interacted directly with Sandusky's minor victims. As we have already explained above, the *Lynn* Court held that § 4304 applies to persons who supervise a child's **welfare**, not persons who supervise a **child**. The absence of direct interaction between Appellant, Shultz, or Curley and Sandusky's victims therefore does not preclude Appellant's conviction under the pre-2007 version of § 4304 as construed in *Lynn*.

Finally, Appellant claims the trial court erred in refusing to instruct the jury on the statute of limitations, and that the trial court erred in instructing the jury on the 2007 version of EWOC. "[A] trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate

statement of the law is there reversible error." ***Commonwealth v. Antidormi***, 84 A.3d 736, 754 (Pa. Super. 2014) (quoting ***Commonwealth v. Trippett***, 932 A.2d 188, 200 (Pa. Super. 2007)), ***appeal denied***, 95 A.3d 275 (Pa. 2014).

Prior to trial, Appellant submitted a proposed jury instruction for child endangerment that reflected the language of the 2001 statute and the Pennsylvania Supreme Court's interpretation of that statute, and he requested an instruction on the statute of limitations. The trial court stated that it would give the standard jury instruction on child endangerment and would charge the jury according to the 2007 version of the statute. Given our analysis of the statute of limitations and of the ***Lynn*** Court's treatment of the pre-2007 version of § 4304, we discern no reversible error.

Specifically, concerning the applicability of § 5552(c)(3), we have rejected Appellant's argument that the prosecution was "facially time-barred." Appellant's Brief at 57. Rather, the applicability of § 5552(c)(3) to misdemeanor EWOC was evident from the complaint and grand jury presentment, and the Commonwealth's evidence as to the victim's age went unchallenged. Given these circumstances, we find no reversible error in the absence of a statute of limitations instruction. Regarding the EWOC conviction, we have concluded that the language added in 2007 or, more appropriately, the language not included in the pre-2007 version, does not alter the result here. On the facts of this case, the trial court's instruction on

the 2007 version of the EWOC statute did not result in an inaccurate statement of the law.

Appellant's final argument, that the trial court's EWOC instruction failed to apprise the jury of all of the elements of that offense, rests largely on Appellant's contentions that the instant case is factually distinguishable from *Lynn*, and that those factual distinctions preclude a conviction here. Our disagreement with the latter contention, explained above, leads us to find no reversible error in the trial court's instruction.

For all of the foregoing reasons, we conclude that Appellant's assertions of error lack merit. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Nichols joins the opinion.

Judge Ransom files a dissenting opinion.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/26/2018